## No. 2387
### Second Circuit Appeal

---

## MARCEL LEGRAND v. UNITED STATES SHEET AND WINDOW GLASS COMPANY

---

(June 23, 1925, Opinion and Decree.)
(June 23, 1925, Supplemental Opinion.)

---

*(Syllabus by the Editor.)*

1. **Louisiana Digest—Master and Servant—Par. 154, 159.**

Section 8, Subsection 1 (e) of the Workmen's Compensation Law, Act No. 20 of 1914, has no application to an injury which causes disability to work, such as an injury to a knee-cap which disabled the injured employee.

2. **Louisiana Digest—Master and Servant—Par. 159, 159 (a).**

Where the injured employee was at first permanently disabled and later on partially disabled to do work of any reasonable character, he is entitled under the Workmen's Compensation Law, Act No. 20 of 1914, to recover 65% of the wage he received at the time of the accident during the period of total disability and 65% of the difference between what he earned at the time of the injury and what he is able to earn at the time of the trial for the period of disability, not to exceed 300 weeks.

3. **Louisiana Digest—Master and Servant—Par. 160 (k).**

The maximum fee in the opinion of the court allowed attorneys in Workmen's Compensation Cases under Act No. 20 of 1914, is 1-3 of the amount recovered.

### SUPPLEMENTAL OPINION.

4. Louisiana Digest—Master and Servant—
Par. 160 (e), 160 (l).

Where the court in its opinion erroneously fixed compensation under Act 216 of 1924, at 65% of the plaintiff's wages whereas it should have been fixed under Act 43 of 1922, at 60%, it can be corrected by supplemental opinion without a rehearing.

Appeal from First Judicial District Court of Louisiana, Parish of Caddo, Hon. T. F. Bell, Judge.

This is a suit by an injured employee for compensation under Workmen's Compensation Law, Act No. 20 of 1914.

There was judgment for plaintiff and the defendant has appealed. Plaintiff has answered the appeal asking that judgment be increased.

Judgment increased and affirmed.

Julius T. Long, of Shreveport, attorney for plaintiff, appellant.

Wilkinson, Lewis & Wilkinson, of Shreveport, attorneys for defendant, appellee.

ODOM, J. Plaintiff was employed by defendant in a factory at a weekly wage of $24.30. On December 5, 1923, while at work, he received an injury to his right knee which, he claims, seriously and permanently injured its usefulness; and he brings this suit to recover compensation at $18 per week for a period of 300 weeks. In the District Court he was awarded compensation at $14.58 per week for 100 weeks, presumably under subsection (e) of section 8 of the workmen's compensation act. The defendant has appealed and plaintiff has answered the appeal and asked that the judgment be amended by allowing him compensation for 300 weeks, less a credit allowed in the District Court.

### OPINION.

It seems that on December 5, 1923, while plaintiff was at his work he received an injury to his right knee which rendered him totally disabled to do any work for some length of time. When he was injured, physicians examined his knee and put it in a cast where it remained for twenty-one days. Upon removing the cast, plaintiff was told to go to the office of the physician four or five days later for an examination; and as he was making an effort to get out of an automobile he says his knee "snapped" again. This was very painful and plaintiff was not able to walk for some time. After he got able to get around on crutches he went back to the office of the physician, Doctor Gorton, who was employed by defendant company, and Doctor Gorton took plaintiff to the office of Doctor Caldwell where it was decided that an operation was necessary. The plaintiff was taken to the hospital where the operation was performed by Doctor Caldwell. Doctor Caldwell said that he did not operate at first on account of the gravity of the operation and the time it takes for the patient to be in the hospital and in bed and the seriousness of going into the joint.

(Page 34):

He says the purpose of the operation was to remove part of the cartilage from the knee joint, for the reason that this cartilage had repeatedly slipped and at each slipping the joint became very much swollen and was absolutely useless as the patient had testified he had to be in bed.

Doctor Caldwell testified that the cartilage was loose at each time and was slipping and that the slipping of the cartilage injured the joint. He says that at the time he operated the joint looked perfectly natural on the outside but that this cartilage was loose, and that the portion of the cartilage that he removed was about an inch and a half long, a half inch wide and about an eighth of an inch thick. The removal of this cartilage greatly relieved plaintiff and he was soon able to walk.

Now the question is, whether the injury and the removal of the cartilage has resulted in any injury to plaintiff's knee and,

if so, what is the extent of the injury and what compensation is due him?

Doctor Caldwell says that he examined plaintiff about eight weeks after the operation and that apparently the operation was a complete success. He says that at the time he examined him he was using the knee perfectly well, so much so that he expressed the desire to go to work, and that he bent the knee in all directions and caused him to stop, and that plaintiff appeared to be in good condition.

He says that there is pain for several months after such an operation but that it is not a "disabling pain". His attention was called to the fact that plaintiff's knee was cold, and he was asked what caused that, and he explained that it was probably caused by the severance of a small nerve during the operation. He thinks that amounts to but very little, however.

Doctor Gorton says that the plaintiff went to him about the 10th of May and told him he was well and wanted to go to work but that he told plaintiff to wait until June 1st. He says that plaintiff seemed to be well.

Doctor G. H. Cassity was sworn in rebuttal and testified that he examined the plaintiff on the day of the trial and that the movements of the knee did not seem normal and caused pain. He said that he made two examinations in the last three days, and was asked to give his findings and he says:

"One of the noticeable features, there is a difference in the temperature of the skin of the two limbs. The skin of the injured knee is perceptibly colder than the other limb."

He said that the circulation was not yet established and that plaintiff does not have the proper strength in the flexor and extensor muscles of the leg; that it seems to hurt him if it is bent, and that he handles it with a certain amount of caution.

And on page 54 he said:

"Well, my opinion is that he suffers some pain in that knee and that functionally it is not as good as the other knee."

He says, further, that in a large percentage of the cases of this kind the removal of cartilage from the knee causes no permanent injury to the knee, although in the case of a few it seems that there are more or less permanent injuries.

The case was tried on part on December 12, 1924, Doctor Cassity was asked to make an examination of the plaintiff in the presence of the court. Counsel for defendant objected on the ground that he had dismissed his expert witnesses and that he would have them present when Doctor Cassity made the examination. The court postponed further trial of the case until February 12, 1925, in order that defendant might have its witnesses present. Doctor Cassity was again placed on the stand on the latter date, but the record does not show that any of defendant's witnesses were present; at least they did not testify.

Doctor Frank H. Walke was appointed by the court to examine the plaintiff previous to the trial. His report is in the record and his conclusions are stated by him to be as follows:

"From other cases of like character which I have treated, the pain is hanging on longer than usual. It seems that it should have been well long before this time, but from observation I feel sure that by the first of July, which will be some four months after the operation, that the knee will be free of pain."

He also says that, from a medical standpoint, the knee is all right.

The plaintiff says he cannot do any work which requires lifting; that he cannot stoop down and get up without difficulty; and that while he can walk, he soon gives out; and that his knee gives him pain all the time, even while he is sitting.

J. D. Anderson, who lives in the house with plaintiff, says that he seems to give out quickly and don't seem to get around

quite as lively as before and that he "complains of giving out". He says that plaintiff can do no hard work.

S. E. Eaves testified that plaintiff cannot stoop down and has to be very careful all the time.

Counsel for defendant say, in brief:

"Dr. Caldwell, Dr. Walke, and Dr. Gorton testify that plaintiff's knee is practically all right. We believe that the true facts in this case are that the plaintiff has some little pain and, perhaps stiffness in his knee joint, which will disappear with use. We do not believe that he suffers more than one-fifth of the loss of his leg."

We are convinced that plaintiff is partially disabled to do work of any reasonable character. He suffers some pain, there is some stiffness in the knee joint, he cannot move it perfectly, and he cannot lift heavy objects. These conditions no doubt interfere with his ability to do the kind of work which his is accustomed to doing and which he will probably be able to find to do.

The lower court was convinced that the plaintiff was injured for it granted to him compensation of $14.58 per week for 100 weeks. The fact that it fixed the period over which the payments should run at 100 weeks indicates that it held that the case falls under Subsection (e) of Section 8 of the workmen's compensation Act. If that be true, we cannot agree with our learned brother on that point. That section of the statute has no application to an injury producing disability to work.

See Mack vs. Legeai, 144 La. 1017, 81 South. 694.

Plaintiff is partially disabled to do work and therefore his case does not fall under that section.

Our conclusion is that he was totally disabled for a while and that at the time of the trial he was partially disabled. He is therefore entitled to full compensation for the time he was totally disabled; and 65% of the difference between the wages he was earning at the time of the injury and the wages he was able to earn thereafter during his disability, not, however, exceeding 300 weeks, the number of weeks of total disability to be deducted from the 300 weeks (Subsection (c) of Section 8).

Doctor Caldwell says that he saw plaintiff on May 10th and that he wanted to go to work.

Doctor Gorton says he advised him not to go to work until about June 1st.

Our conclusion is that he was totally disabled until about June 1, 1924, or a period of about 25 weeks, and we fix the period of total disability at 25 weeks, dating from December 5, 1925.

Plaintiff was receiving at the time of his injury $24.30 per week. He is therefore entitled to receive $15.79 per week for 25 weeks.

It is difficult to fix the amount that he is now able to earn. He was engaged in painting and repairing stoves and made as high as $18 per week. His partner says he could not make more than $12 per week net. We think it proper, under the testimony, to hold that he can now earn $12 per week. He was earning $24.30 before he was injured. He is now entitled, therefore, to $7.99 per week or 65% of the difference during disability, not beyond 300 weeks, less, however, 25 weeks during which time he is granted compensation for total disability, to begin at the end of the total disability period.

The defendant should, of course, have credit for all payments made.

For the reasons assigned, it is therefore ordered, adjudged and decreed that the judgment appealed from be amended so as to read as follows:

It is ordered, adjudged and decreed that plaintiff, Marcel LeGrand, do have judgment against and recover from the defendant United States Sheet & Window Glass Company for weekly compensation for total disability in the sum of $15.79 per

week for 25 weeks, beginning December 5, 1923, and weekly compensation for partial disability in the sum of $7.99 per week during disability, not, however, beyond 300 weeks; less the 25 weeks for which he is granted compensation for total disability; the payments for partial disability to begin at the end of the total disability period. All deferred payments to bear interest at the rate of 5% per annum from the time they became due. Defendant to have credit for all payments previously made.

The fees of the attorney representing the plaintiff are fixed at one third of the amount recovered.

Defendant to pay all costs.

## SUPPLEMENTAL OPINION.

The plaintiff was injured on December 5, 1923.

The act in force at that time was Act No. 43 of 1922, which fixes compensation in cases like this at 60 per cent of the difference between wages at the time of the injury and wages which the injured employee is able to earn thereafter.

Our decree is incorrect in that it awarded compensation at 65% per cent of the difference in wages.

It is now ordered that our former decree be corrected and amended so as to read as follows:

It is ordered, adjudged and decreed that plaintiff, Marcel LeGrand, do have judgment against and recover from the defendant United States Sheet & Window Glass Company for weekly compensation for total disability in the sum of $15.79 per week for twenty-five weeks, beginning December 5, 1923, and weekly compensation for partial disability in the sum of $7.38 per week during disability, not, however, beyond 300 weeks less the twenty-five weeks for which he is granted compensation for total disability; the payments for partial disability to begin at the end of the total disability period. All deferred payments to bear interest at the rate of 5% per annum from the time they became due. Defendant to have credit for all payments previously made.

The fees of the attorney representing the plaintiff are fixed at one third of the net amount recovered.

Defendant to pay all costs.