No. 2367

Second Circuit Appeal

---

**JULIUS PITTMAN v. ROXANA PETROLEUM CORPORATION**

---

(June 27, 1925, Opinion and Decree.)
(October 6, 1925, Writ of Certiorari to Supreme Court Refused.)

---

*(Syllabus by the Editor.)*

1.  **Louisiana Digest—Master and Servant— Par. 159, 159 (a).**
Where the plaintiff and injured employee suing under the Workmen's Compensation Act No. 20 of 1914 was suffering disability to do work of any reasonable character at the time of the trial and the end of his disability could not be determined with certainty from the evidence, he should be awarded compensation during disability not to exceed 300 weeks as prescribed by Section 8, Subsection 1 (a) of the Workmen's Compensation Act.

2.  **Louisiana Digest—Master and Servant— Par. 160 (k).**
Under the Workmen's Compensation Law Act No. 20 of 1914, attorney's fees should not exceed 1-3 of the amount recovered; but this amount will not include money paid voluntarily by the employer.
(The recent amendment of Section 8 of Act 20 of 1914 is Act 216 of 1924.)

Appeal from First Judicial District Court of Louisiana, Parish of Caddo, Hon. E. P. Mills, Judge.

Huey P. Long, of Shreveport, attorney for plaintiff, appellee.

Wilkinson, Lewis & Wilkinson, of Shreveport, attorneys for defendant, appellant.

REYNOLDS, J. In this case plaintiff sues for $4,320, compensation at $14.50 per week during disability, not exceeding 300 weeks, for an injury to his left arm caused by its being struck with a Stillson wrench at or near the elbow on September 5, 1923.

The case was tried on June 7, 1924, and judgment was rendered in favor of plaintiff for $23.14.

Both plaintiff and defendant applied for a new trial and a new trial was granted.

The case was tried a second time on December 17, 1924, and on February 18, 1925, judgment was rendered in favor of the plaintiff for compensation at the rate of $14.40 per week for a period of 100 weeks.

Defendant appealed, and plaintiff has answered the appeal and asks that the judgment be amended so as to allow him compensation during disability for a period of not exceeding 300 weeks.

## OPINION

On trial of the case on June 7, 1924, the plaintiff's injury was admitted to have terminated and there was judgment in his favor for a period of time less than two months.

On the second trial of the case—more than six months later—December 17, 1924, plaintiff testifies as to his injuries as follows:

(Page 2):

"Q. Where was this injury?
"A. In the elbow joint.
"Q. I will ask you to please state if your arm has yet recovered from the injury?
"A. No, sir, it has not."

(Page 3):

"Q. (By the court) When you say in the joint you mean at the point of the elbow?
"A. Yes, sir. Then when I grab anything in twisting my arm there is a sprain in here like a sprained ankle.
"Q. Causes a sprain in the joint?
"A. Yes, sir."

* * *

"Q. (By the court) As I understand you, when you grab anything or turn your wrist it causes pain in your elbow?
"A. Causes a sprain and there will be three or four days that I cannot use it.
"Q. What do you mean by sprain?
"A. Something like when you sprain your ankle or something.
"Q. In what way does that sprain show itself?
"A. Causes this soreness.
"Q. Causes soreness in the point in the elbow?
"A. Yes, sir."

(Page 4):

"Q. Now, Mr. Pittman, how long have you been working with that arm?
"A. About two months and a half altogether.
"Q. Two months and a half?
"A. Yes, sir.
"Q. Have you worked two months and a half straight?
"A. No, sir.
"Q. What part of that time have you worked?

"A. About one third."

(Page 5):

"Q. Now why haven't you worked more?
"A. I wasn't able.
"Q. Why weren't you able?
"A. On account of this arm. When I first went to Arkansas I taken a roustabouting job and the second day I had to quit on account of this arm."

Doctor E. L. Sanderson testified, page 6:

"Q. I am referring to his left arm only. What did you find from your diagnosis?
"A. There is a very distinct roughening of the ulna extending from the ulna down the arm towards the wrist for about two inches with about a one-eighth-inch elevation and this rough or elevated part of the bone is tender."

* * *

"Q. Did you have the advantage of an x-ray report?
"A. We did.
"Q. What did you determine it to be from that?
"A. Periostitis."

(Page 7):

"Q. This injury to the bone is supposed to have occurred on the 5th day of September, 1923, just one year and three months ago. What is the indication as to that periostitis for the future?
"A. Well I would say that it will either finally result in bone disease or it will form an abscess and come to the surface."

Doctor G. A. Caldwell testified, page 27:

"I find the condition practically unchanged. There is no swelling about the elbow. There is still a slight inability to fully extend—straighten the arm at the elbow and there is a little so-called joint crepitus in the joint itself—that is a little dry grating that is perceptible when he first makes a movement but not on later movements. Otherwise than that I find nothing but this tenderness which he complains of, the tenderness being to the side— on either side of the point of the fracture and extending up the arm. There is no swelling and no tangible external evidence of that injury except the enlargement of the bone and the roughening on the bone which is the result of repair. May I explain that process of repair?"

(Page 29):

"Q. Doctor, just what do you find wrong with this man's elbow now, to keep him from using the elbow in a perfectly normal way in every day work?

"A. The inability to fully extend the arm is probably accompained by a certain amount of discomfort. In addition to that these joints, where the fracture has occurred in the joint, do have somewhat more discomfort with changes of weather than at any other time but I have seldom seen such a case where one is kept from doing his usual work. Other than that I see no reason for this man not using his joint regularly and freely."

(Page 34):

"Q. Doctor, you did state that when you caused him to flex the elbow that you heard a grating sound?

"A. Yes, sir."

(Page 35):

"Q. From your examination of the elbow do you think that the man is stating the truth?

"A. I might qualify that by the truth as he sees it. I think that the patient is absolutely honest with himself about that but it is not infrequent that when one has an injury and has focussed his thought on it for a considerable time that the slighest trouble—the slighest discomfort that results from it—becomes magnified in his mind; and then patients have been taught to fear that they might hurt their injuries or that they might prevent repair in some way and in doing that they become excessively careful; very careful and very sensitive to sensation."

Doctor C. M. Petty testifies in answer to interrogatory No. 5:

"First he was brought to the Haynesville Sanitarium immediately after the injury. An x-ray picture was made showing the nature and extent of the injury. Fragments of bones were placed in apposition and external wound made aseptic by the free use of tincture of iodine. Arm was immobilized and placed in plaster of paris cast leaving an opening for dressing of the wound. Exterior wound healed without infection. Union of bones cured without any trouble, and he followed my instructions and treatment according to my instructions."

The diagnosis of Doctor Sanderson is diametrically opposite to that of Doctor Caldwell.

Doctor Sanderson thinks the plaintiff is suffering from periostitis.

Doctor Caldwell thinks his arm is well and that he could work if he would try.

"Who shall decide when doctors disagree and soundest casuists doubt like you and me?"

Plaintiff testified that his arm was still tender on the day of the last trial and on this point Doctor Sanderson and Doctor Caldwell agree.

Doctor Caldwell testified that the tenderness extended on both sides of the arm and was a matter that could not be "faked".

The District Judge who tried the case and saw and heard the witnesses, held that plaintiff was still suffering from his injury and that the determination of the effects of the injury had not yet been reached at the time of the second trial. We cannot say that his finding on this point was manifestly erroneous.

This court in the case of T. J. O'Donnell vs. Fortuna Oil Company held that where a plaintiff in a suit for compensation under the Workmen's Compensation Act was still suffering disability and unable to do work of any reasonable character at the time of the trial and the end of his disability could not be determined with certainty from the evidence, he should be awarded compensation during disability, not exceeding the time prescribed in the Workmen's Compensation Act.

For the above reasons, it is ordered, adjudged and decreed that the judgment appealed from be amended by changing the time during which plaintiff shall receive compensation from 100 weeks to the duration of his disability, not exceeding 300 weeks, subject to the credit allowed in the judgment appealed from.

And accordingly it is ordered, adjudged and decreed that there be judgment in

favor of the plaintiff, Julius Pittman, and against defendant, Roxana Petroleum Corporation, for compensation at the rate of $14.40 per week during plaintiff's disability, not to exceed 300 weeks, the first payment being decreed due September 12, 1923, with legal interest on each weekly payment from its maturity until paid; less the payment made by defendant to plaintiff, amounting to $306.00 which payments are to be credited on the first installments of compensation due under this judgment.

The contract between plaintiff and his attorney for fee is approved for one third of the net amount recovered by plaintiff under this judgment but shall not be deemed to include one third of the amounts voluntarily paid by defendant to plaintiff.

All costs in both courts to be paid by defendant.