(109 So. 538)

No. 27743.

## BLACK v. LOUISIANA CENT. LUMBER CO.

## In re LOUISIANA CENT. LUMBER CO.

(May 31, 1926. Rehearing Denied June 28, 1926.)

*(Syllabus by Editorial Staff.)*

**1. Master and servant ☞385(13).**

Injury to train conductor's hand, caught between drawheads, causing stiffness of fingers and lack of strength in grip, *held* compensable under Act No. 43 of 1922, § 8, subsec. (c) relative to partial disability, and not under subsection (e).

**2. Master and servant ☞385(11).**

Compensation for injury producing disability to do work of any reasonable character is determined by Act No. 43 of 1922, § 8, subsecs. (a)–(d), relative to injury causing temporary total, temporary partial, permanent partial, and permanent total disability, and not by subsection (e).

**3. Statutes ☞200.**

In provision in Act No. 43 of 1922, § 8, subsec. (e), for compensation, "where the usefulness of a member of any physical function is seriously permanently impaired," "of" after "member" will be read as "or" it being obvious typographical error, in view of Act No. 243 of 1916, Act No. 38 of 1918, Act No. 247 of 1920, and Act No. 216 of 1924, amending Act No. 20 of 1914.

**4. Master and servant ☞385(11).**

Act No. 43 of 1922, § 8, subsec. (e), relative to compensation for injured workman, *held* not to apply to case falling within subsections (a)–(d), relative to compensation for temporary total, temporary partial, permanent partial, and permanent total disability.

**5. Master and servant ☞385(13).**

Partial loss of use of hand *held* compensable under Act No. 43 of 1922, § 8, subsec. (c), relative to partial disability and not subsec. (d), relative to loss of member, though compensation under (c) might extend over longer time than (d).

**6. Appeal and error ☞1119.**

In reviewing judgment of the Court of Appeal at instance of party to suit, Supreme Court will not amend judgment to appellate's prejudice to advantage of party who has not complained.

**7. Appeal and error ☞1119.**

In amending judgment of Court of Appeal awarding compensation to injured employee, Supreme Court will restrict period of payments so that amount of judgment in favor of employee who did not appeal will not be increased.

**8. Master and servant ☞391¼, New, vol. 10A Key-No: Series.**

Interest on additional compensation awarded injured workman will be computed from date voluntary payments ceased, notwithstanding such payments were larger than required, in view of Act No. 43 of 1922, § 8, subsec. 6.

**9. Master and servant ☞412.**

Motion by employer, accompanied by ex parte affidavits, filed while case was pending on rehearing in Court of Appeal, to have compensation case remanded to district court for introduction of additional evidence of plaintiff's ability to work, *held* properly overruled.

St. Paul, J., dissenting.

Proceeding under the Workmen's Compensation Act by Willie A. Black, claimant, opposed by the Louisiana Central Lumber Company, employer. Judgment of the district judge was affirmed by the Court of Appeal (2 La. App. 798), and the employer applies for certiorari or writ of review. Judgment amended and affirmed.

Thornton, Gist & Richey, of Alexandria, for relator.

Huey P. Long, of Shreveport, for respondent.

O'NIELL, C. J. This is a suit for compensation under the Employers' Liability Act, being the Act 20 of 1914, as amended by Act 243 of 1916, Act 38 of 1918, Act 247 of 1920, and Act 43 of 1922. The Act 216 of 1924, which is the latest amendment of the statute, is not applicable, because the cause of action arose before this amendment went into effect. The plaintiff was employed as conductor on a logging train of the defendant lumber company, and, while he was engaged in coupling cars, his right hand was caught between the drawheads and injured. The in-

jury disabled him for work of any reasonable character for several weeks, and the company paid him compensation at the rate of $18 a week for 19 weeks; after which the company, averring that he was able to resume his work, offered to reinstate him in his former employment at the same wages. He replied that his injured hand was yet useless, and that the work of a conductor on a log train, which required his doing the work of a brakeman at times, was too dangerous for a man having the use of only one hand. The company, insisting that he had recovered from the injury, refused to continue paying compensation; hence this suit.

The plaintiff, averring that his wages amounted to $42 a week at the time of the accident, and that he was not able to earn more than $10 or $12 a week afterwards, sued for 60 per cent. of the difference between the wage-earning capacity before and after the accident, or for $18 a week, being the maximum compensation allowed by the statute, during the period of disability, not beyond 300 weeks. The defendant, answering the suit, admitted that the accident had occurred as alleged, but denied that it had produced any serious permanent injury or disability for work, and averred that the plaintiff's wages were only $34.92 a week at the time of the accident, and that he had recovered completely his wage-earning capacity when the company quit paying compensation, after paying for 19 weeks.

Five surgeons, who examined the plaintiff's hand with the X-ray and other apparatus, testified in the case, two for the plaintiff and three for the defendant, besides which, the plaintiff exhibited his hand in court and demonstrated its weakness, deformity, and want of flection of the fingers. The district judge found that the middle or second finger was badly deformed, and could not be extended straight or bent inward to the palm of the hand; that the third finger and little finger were also lacking in flection towards the palm of the hand; and that there might be also injury in the metacarpus. Two of the surgeons testified that the injured hand remained cold and flabby and disposed to sweat, because of injury to the nerves. There was also a lack of strength in the grip. All of the surgeons agreed that the middle finger, having been fractured, remained bent sideways, the bend being in the phalanx next to the hand. That finger had lost so much of its flection that it could not be extended straight outward, or bent inward to within an inch of the palm of the hand. The other fingers could be extended straight outward but not bent inward to within half an inch of the palm of the hand. There is no doubt that the injury produced a partial disability to do the work of a railroad trainman, or "work of any reasonable character," as the statute says. The only question that the district judge had to decide was the extent of the disability at the time of the trial. The plaintiff claimed compensation at the rate of 60 per cent. of the difference between the wages that he was earning at the time of the accident and the wages that he was able to earn afterwards. He claimed compensation, therefore, under subsection (c) of section 8 of the Act 43 of 1922, viz.:

"(c) For injury producing partial disability to do work of any reasonable character, sixty per centum of the difference between wages at the time of injury and wages which the injured employee is able to earn thereafter during the period of disability, not, however, beyond three hundred weeks."

The district judge allowed compensation at the rate of $18 a week for 100 weeks, under subsection (e) of section 8 of the statute, which subsection provides:

"(e) In cases not falling within any of the provisions already made, where the employee is seriously permanently disfigured about the face or head, or where the usefulness of a member of any physical function is seriously permanently impaired, the court may allow such com-

pensation as is reasonable in proportion to the compensation hereinabove specifically provided in the cases of specific disability above named, not to exceed sixty per centum of wages during one hundred weeks."

Both parties appealed from the judgment to the Court of Appeal for the Second Circuit; both parties insisting that the case was governed by subsection (c), and not by subsection (e), of section 8 of the statute. The Court of Appeal agreed with the district judge that the plaintiff was entitled to recover under subsection (e), and affirmed the judgment.

[1] We issued a writ of review, at the instance of the defendant, because the ruling that the case was governed by subsection (e) of section 8 of the statute seemed to conflict with the settled jurisprudence on the subject, and with the language of the statute itself. The learned counsel for the defendant concede that the plaintiff was entitled to recover under subsection (c) 60 per cent. of the difference between the wages that he was earning at the time of the accident and the wages that he was able to earn afterwards, during the period of disability, not to exceed 300 weeks; but the learned counsel contend that the period of disability did not extend beyond the 19 weeks, for which the compensation was paid. The plaintiff did not apply for a writ of review, but his learned counsel also insists in his brief that the case is governed, not by subsection (e) but by subsection (c), and that the plaintiff should recover, not 60 per cent. of his wages for 100 weeks, but 60 per cent. of the difference between the wages which he was earning at the time of the accident and the wages which he was able to earn afterwards, during the period of disability, not exceeding 300 weeks. He contends that the difference in wage-earning capacity before and after the accident was at least $30 a week, and that the plaintiff is therefore entitled to the maximum allowance of $18

a week during the period of disability, not beyond 300 weeks.

The record shows that plaintiff's wages averaged $36 a week at the time of the accident. He was receiving 48½ cents an hour, working 12 hours a day and 6 days in the week, and working occasionally on Sundays. After the accident, he was not able to earn more than $10 a week. He earned the $10 a week hauling wood for a stave mill. The difference between the weekly wages that he earned at the time of the accident and the weekly wages that he was able to earn afterwards was therefore $26, 60 per cent. of which is $15.60.

[2, 3] If it is possible for any proposition to be settled by the jurisprudence of a court of justice, it has been settled by the repeated and consistent rulings of this court and of the Courts of Appeal that, under the Employers' Liability Act, the compensation to be paid for an injury producing disability to do work of any reasonable character is determined, not by subsection (e), but by subsection (a), or subsection (b), or subsection (c), or subsection (d), as the case may be. Subsection (a) provides for compensation for an injury producing temporary total disability to do work of any reasonable character; subsection (b) provides for compensation for an injury producing permanent total disability to do work of any reasonable character; subsection (c) provides for compensation for an injury producing partial disability—either temporary or permanent partial disability—to do work of any reasonable character; and subsection (d) fixes definitely the compensation for certain specified permanent injuries, that is, for the loss of a thumb, finger, toe, hand, arm, foot, leg, or an eye, and for the loss of both hands, both feet, or both eyes, or a hand and a foot. At the end of subsection (d) is a new paragraph, which was not in the statute before it was amended by the act of 1922, declaring that the permanent to-

tal loss of the use of a member—meaning a thumb, finger, toe, hand, arm, foot or leg—shall be equivalent to the amputation of the member. Then follows subsection (e), making provision for injuries' *not producing disability to do work of any reasonable character.* This subsection provides that, "in cases not falling within any of the provisions already made," where an employee is seriously permanently disfigured about the face or head, or where the usefulness of a member or any physical function is seriously permanently impaired, the court may allow such compensation as is reasonable in proportion to the compensation thereinabove specifically provided for the cases specified, not to exceed 60 per cent. of the wages during 100 weeks. There is a misprint in subsection (e), in the act of 1922. The word "or" is erroneously printed "of" in the expression, "where the usefulness of a member *of* any physical function is seriously permanently impaired." The word was printed correctly, "or," when this subsection was' originally enacted, in the amendment of 1916, and also in the amendments of 1918 and of 1920, and it is printed correctly, "or," in the amendment of 1924. To speak of the usefulness of a member *of* any physical function would not make sense. Therefore, following the Scotch rule, and observing the very obvious typographical error, we must read subsection (e), in the statute of 1922, as if it said, "where the usefulness of a member *or* any physical function," etc.

Of course, when a man's hand is seriously permanently deformed and weakened, as in this case, the case is one "where the usefulness of a member is seriously permanently impaired." But subsection (e), in terms, declares that it is *not* applicable to a case "where the usefulness of a member or any physical function is seriously permanently impaired," except "in cases not falling within any of the provisions already made"; that is, in cases not falling within subsection (a), (b), (c), or (d).

[4] We have decided, at least five times, with the utmost deliberation, and with careful consideration of the several amendments of section 8 of the statute, that subsection (e) does not apply to a case falling within the provisions of subsection (a), subsection (b), subsection (c), or subsection (d). See Mack v. Legeai, 144 La. 1017, 81 So. 694; Norwood v. Lake Bisteneau Oil Co., 145 La. 823, 83 So. 25; Garr v. Wyatt Lumber Co., 147 La. 689, 85 So. 640; Dennis v. Huber, 151 La. 589, 92 So. 126; and Daniels v. Shreveport Producing & Refining Corporation, 151 La. 800, 92 So. 341.

In Mack v. Legeai, supra, decided soon after subsection (e) was enacted as an amendment of the statute of 1914, we said:

"Defendant contends, and the district court has held, that the expression in the new paragraph of section 8, 'In cases not falling within any of the provisions already made,' refers to and excludes only the special provisions for the injuries specifically described in that subsection. Plaintiff contends, and we think correctly, that the idea was to make a general provision for compensation to be allowed for serious permanent injury, 'in cases not falling within any of the provisions already made' *in that or any other subsection of section 8.*"

In Garr v. Wyatt Lumber Co., supra, "plaintiff fell upon the log carriage and suffered a severe injury, as a result of which his left arm was paralyzed." The defendant, lumber company, contended that the injury came under subsection (e), because it was not specifically provided for in subsection (d). We held that the injury did not fall under subsection (e), because it was provided for in subsection (c), providing "for injury producing partial disability," either temporary or permanent. Here is what we said:

"Counsel for defendant contends that subsection (e) is applicable to any injury producing permanent partial disability for work, and that the decision to the contrary in Mack v. Legeai should be overruled. If that were true, the new subsection, (e), would have the effect of abolishing the provisions of subsection (d) for injury producing permanent partial disability.

"In the amending statute of 1916, the new paragraph, which is now subsection (e) in section 8, was inserted as an additional paragraph in subsection (d), which otherwise provided only for specific injuries, as the loss of a thumb, finger, toe, hand, an arm, a foot, leg, or an eye. Subsection (c), which originally made provision for those specified injuries as well as for all other permanent partial disabilities generally, was then made to apply only generally to injuries, other than those specified, producing permanent partial disability.

"In that situation we said, in the case of Mack v. Legeai:

" 'What has caused the confusion and doubt as to whether the expression "in cases not falling within any of the provisions already made" excludes the cases provided for in the general provisions of subsection (c), or excludes only the special provisions of the new subsection (d), is that the new paragraph providing for serious permanent injuries, without regard to disability to work, is placed in the same subsection with certain permanent partial disabilities that are specifically described; and they, in turn, are taken out of subsection (c) and put into a subsection of their own, as if it were possible to have five classes of disability to do work. There would be no room for misunderstanding if the new paragraph, making provision for serious permanent injuries, "in cases not falling within any of the provisions already made," had been given a separate section or subsection or if the special provisions for the permanent partial disabilities specifically described had been left in subsection (c), where they belong.'

"In the new arrangement of section 8, in the amending statute, Act 38 of 1918, the new paragraph, making provision for 'cases not falling within any of the provisions already made,' has been taken out of subsection (d) and is now in a separate subsection, designated as subsection (e). Thus the Legislature has removed all doubt that the new subsection is applicable only to cases of injury not producing incapacity for work, as was held in the case of Mack v. Legeai.

"The case before us, therefore, is governed by the provision of subsection (c) of section 8 of the Act 38 of 1918, viz.:

" 'For injury producing partial disability to do work of any reasonable character,' " etc.

In Dennis v. Huber, supra, the plaintiff "injured his right forearm, which involved the hand and wrist." The case was very much like the one before us, in that the plain-

161 LA.—29

tiff had not lost his hand, or suffered "the permanent total loss of the use" of the member. We held that the case was governed by the provisions of subsection (c), for permanent partial disability, and not of subsection (e). Here is what we said:

"From the above we find that, though the injury is permanent, it only partially incapacitates plaintiff to work. When the injury produces only partial disability, the rule is that the laborer shall receive 55 per cent. of the difference between the wages at the time of the injury and the wages that the injured employee is able to earn thereafter, during the period of disability, not to exceed 300 weeks. Subsection (c) of section 8 of Act 38 of 1918, p. 53."

In Daniels v. Shreveport Producing & Refining Corporation, supra, where the plaintiff suffered a permanent partial impairment of the use of his right arm, we held that the case was governed, not by subsection (e), but by subsection (c), providing for permanent partial disability. We said:

"The evidence shows, and it is not disputed, that the injury complained of has produced permanent though only partial disability. Plaintiff's right arm was fractured above the elbow; and, when reset—for it had to be set a second time—a serious deformity resulted. The arm is permanently bent, is three inches shorter than the other arm, and is permanently weakened. The injury is therefore within the class defined in subsection (c) of section 8 of the statute, viz.:

" 'For injury producing partial disability,' etc."

In the case of Mack v. Legeai, and in Garr v. Wyatt Lumber Co., supra, we observe that the amendment of the statute (by the Act 243 of 1916), by enacting what is now subsection (e), was intended only to cover injuries which did not produce disability to earn wages. We said that the amendment was probably enacted to cover a case like that of Effie Boyer v. Crescent Paper Box Factory, 143 La. 368, 78 So. 596, where a young woman's hair got caught in a revolving shaft, and she was scalped. The statute had already provided for every possible class of injuries producing dis-

ability to earn wages, viz.: (a) Temporary total disability; (b) temporary partial disability; (c) permanent partial disability; and (d) permanent total disability. The provisions for the specific permanent partial disabilities, like the loss of a hand, arm, foot, leg, etc., were properly placed under subsection (c); at the end of which it was said that the loss of both hands, or both arms, or both feet, or both legs, or both eyes, or a hand and a foot, should be compensated according to the provisions of subsection (d), for total permanent disability. In other words, the statute made provision for all of the four classes of disability, viz.: temporary total, temporary partial, permanent partial, and permanent total; and the addition of subsection (e) merely covered cases where the injury did not produce any disability to earn wages. That is why the subsection commenced with the expression, "In cases not falling within any of the provisions already made."

The compensation that was allowed in Quave v. Lott-Baston Lumber Co., 151 La. 1052, 92 So. 678, was in accord with the other decisions which we have cited. The injury consisted of the loss of the second, third, and fourth finger and the three metacarpal bones that connected them with the wrist. All that was left of the hand was the thumb and index finger, which was stiff and deformed and useless, and less than half of the metacarpus. The court allowed the same compensation that would have been allowed for the loss of the hand. The question before the court was whether the injured employee should recover only for the loss of the three fingers or should recover something more— not exceeding what would be allowed for the loss of the hand—for the loss of the three metacarpal bones and the injury to the index finger. The allowance of all of the compensation that would have been allowed for the loss of the hand was based upon the fact that the employee had virtually lost his

hand, and upon the proviso in the eleventh paragraph of subsection (d), subd. 1, § 8, of Act 247 of 1926, virtually declaring that, under proper circumstances, the compensation allowed for the loss of the hand might be allowed for an injury worse than the severing of a finger but not so bad as the severing of the hand. The court referred to subsection (e) as also warranting compensation for the loss of the metacarpal bones and the loss of use of the index finger; but that was because, previous to the amendment declaring that the permanent total loss of the use of a member should be regarded as the loss of the member, the injury for which the additional compensation was allowed under subsection (e) was not otherwise provided for.

For the same reason, in Kinney v. Edenborn, 151 La. 216, 91 So. 712, the court allowed compensation under subsection (e) for the loss of one phalanx of a finger. In that respect, however, the decision was virtually overruled by Bell v. Merchants' Cotton Oil Co., 160 La. 585, 107 So. 436.

The three courts of appeal in this state also have ruled consistently heretofore that, for an injury producing disability to do work of any reasonable character, the compensation is determined, not by subsection (e), but by subsection (a), (b), or (c), as the case may be. And this court, in refusing to grant a writ of review, has affirmed the ruling in every instance where the writ of review was applied for. Reeves v. Dietz et al. (Orleans) 1 La. App. 501; Turner v. Standard Oil Co. (Second Circuit) 1 La. App. 665; Blythe v. Askew et al. (Second Circuit) 2 La. App. 415, docket No. 27481 of Sup. Ct.;[1] Legrand v. U. S. Sheet & Window Glass Co. (Second Circuit) 2 La. App. 549; Pittman v. Roxana Petroleum Corporation (Second Circuit) 2 La. App. 561, docket No. 27500 of Sup. Ct.;[1] Davis v. Gillis (First Circuit), 2 La. App. 567; King v. McClanahan and Maryland

---

[1] No opinion.

Casualty Co. (Second Circuit), 4 La. App. Advanced Rept. No. 6, p. 126, Docket No. 27737 of Sup. Ct.[1] In the later case we said: "The writ is refused because the judgment is correct."

In Reeves v. Dietz et al., supra, the injury was only a partial disability of the left hand. The Orleans Court of Appeal allowed compensation during the period of disability, not beyond 300 weeks. We quote the syllabus, viz.:

"An injury causing partial disability to work is covered by subdivision (c) of section 8 of the Compensation Act and not subdivision (d) of section 8 of the act, where awards are made employees without reference to the effect upon earning capacity."

In Turner v. Standard Oil Co., supra, the employee's wrist only was injured, and the court allowed compensation for partial disability, under subsection (c).

In Blythe v. Askew et al., supra, the plaintiff's foot was crushed, which was the extent of the injury. The defendant contended that the case was governed by subsection (e), but the court ruled that it was governed by subsection (c); and we affirmed the ruling, saying, in refusing to grant a writ of review, that the judgment was correct. In refusing a rehearing in the case, the court of appeal said:

"Defendant's able counsel urge that subsection (e) of section 8 of the Compensation Act should apply. It seems clear to us that it cannot. This subsection begins: 'In cases not falling within any of the provisions already made,' etc. We think the case does fall within a previous provision of the statute." 2 La. App. 417, 418.

In Legrand v. U. S. Sheet & Window Glass Co., supra, the plaintiff's knee was injured. He sued for compensation under subsection (c) for 60 per cent. of the loss of wage-earning capacity during the period of disability, not beyond 300 weeks. The district court allowed 60 per cent. of the wages for 100 weeks, under subsection (e). The Court of Appeal amended the judgment by allowing compensation under subsection (c). The court said:

"The lower court was convinced that the plaintiff was injured, for it granted to him compensation of $14.58 per week for 100 weeks. The fact that it fixed the period over which the payments should run at 100 weeks indicates that it held that the case falls under subsection (e) of section 8 of the Workmen's Compensation Act. If that be true, we cannot agree with our learned brother on that point. That section of the statute has no application to an injury producing disability to work. See Mack v. Legeai, 144 La. 1017, 81 So. 694."

[5] Our conclusion is that the plaintiff in this case was entitled to recover, as compensation for his injuries, not 60 per cent. of his wages for 100 weeks, under subsection (e), but 60 per cent. of the difference between the wages that he was earning at the time of the injury and the wages that he was able to earn afterwards, during the period of disability, not, however, beyond 300 weeks. It is suggested that, in this particular case, the compensation that should have been allowed was subject to the further restriction that it should not exceed 60 per cent. of the wages being earned at the time of the accident, for 150 weeks, and subject, of course, to the maximum limit of $18 per week. The reason for the suggestion is that the plaintiff's injury was confined to the partial loss of the use of his hand. The last paragraph (being the new provision) of subsection (d) of section 8 of the statute declares that the permanent total loss of the use of a member, such as the hand, shall be equivalent to the amputation of the member; and the sixth paragraph of the same subsection provides that, for the loss of a hand, the compensation shall be 60 per cent. of the wages for 150 weeks. The three courts of appeal have held, in several cases, that for an injury producing disability to do work of any reasonable character, even though the injury is

confined to the partial loss of the use of a member, such as a hand or an arm or a foot or a leg, the compensation is determined by subsection (a), or (b), or (c), and not by subsection (d), which provides for the loss of a hand or an arm or a foot or a leg, or for the permanent total loss of the use of such member. See Bryant v. Texas Pipe Line Co. (Second Circuit) 1 La. App. 42; Reeves v. Dietz et al. (Orleans App.) 1 La. App. 501, 505; O'Donnell v. Fortuna Oil Co. (Second Circuit) 2 La. App. 462; Davis v. Gillis (First Circuit) 2 La. App. 567; and Chandler v. Oil Fields Gas Co. (Second Circuit) 2 La. App. 778. It appears that there was no application for a writ of review in any of those cases.

The syllabus of the opinion of the Court of Appeal in Bryant v. Texas Pipe Line Co., supra, expresses the doctrine prevailing in that court, viz.:

"Where employee's leg and knee are injured causing temporary disability from doing work of reasonable character; held, section 8, subsec. 1 (d), of Act 20 of 1914, the last paragraph of which reads: 'The permanent total loss of the use of a member shall be equivalent to the amputation of the member,' does not apply, but section 8, subsec. 1 (a), of Act 20 of 1914, does apply."

Reeves v. Dietz, supra, is also directly in point. The plaintiff's injuries were confined to a partial loss of the use of his left hand. The defendant's counsel defended on the ground, viz.:

"That, it being conceded, even by plaintiff's counsel and physician, that the plaintiff retains a substantial part of the use of his hand, under no circumstances can this plaintiff recover beyond 150 weeks. Otherwise he would recover for the partial loss of use of his hand a greater amount than he could recover for the total loss of the use of his hand."

The court answered the proposition thus (page 505):

"The second point raised by defendant is that plaintiff's claim is controlled by paragraph 5, subd. (d) of section 8 of Compensation Act which allows 60 per cent. of difference between wages earned at the time of the injury and wages which employee is able to earn thereafter during period of disability, not, however, beyond 150 weeks. Plaintiff claims that subsection (c) of section 8 of the act controls. The difference between the two provisions of the law is that the maximum period of disability for which compensation is awarded is 150 weeks in one case and 300 weeks in the other. Subsection (d) fixes compensation for the loss of a hand and the contention is that, since the amendatory act of 1922 declares that 'the permanent total loss of the use of a member is equivalent to the amputation of the member,' plaintiff having lost the use of his hand must be controlled in his claim for compensation by this section. We do not agree with counsel. In the first place plaintiff has not lost the entire use of his hand and moreover subsection (d) relates to injuries without regard to the effect upon earning capacity, whereas subsection (c) controls when the injury produces 'partial disability to do work of any reasonable character.' "

The court was mistaken in saying that paragraph 5 of subsection (d) allowed 60 per cent. of the difference between the wages earned at the time of the injury and the wages which the employee was able to earn thereafter during the period of disability, not however, beyond 150 weeks. Paragraph 5 of subsection (d) allows 60 per cent. not of the difference in the wage-earning capacity, but of the total wages earned at the time of the injury; and that paragraph of the subsection does not limit the payments to the period of disability, or to 150 weeks, but fixes the period absolutely at 150 weeks. The language of the statute is very plain and free from ambiguity in that respect. If the author of the opinion in Reeves v. Dietz had observed that paragraph 5 of subsection (d) allowed 60 per cent. of the full wages instead of 60 per cent. of the difference in wage-earning capacity, and that it fixed the period absolutely at 150 weeks instead of limiting it to the period of disability, not exceeding 150 weeks, the author of the opinion in Reeves v. Dietz could have given much better reasons than he did give for holding that the

compensation for an injury producing partial disability to do work of any reasonable character, even though the injury produced a partial loss of the use of a member, should be determined according to subsection (c) and not according to subsection (d).

In O'Donnell v. Fortuna Oil Co., supra, the court said:

"More compensation is allowed under section 8, subsec. 1 (c), of Act 20 of 1914, where a finger, etc., is disabled than under section 8, subsec. 1 (d), where it is amputated, but this is not necessarily an injustice."

In the reasoning, in the opinion last cited, the court disregarded the new paragraph in the statute, saying that the permanent total loss of the use of a member is equivalent to the amputation of the member; and the author of the opinion therefore observed that a deformed finger might be worse than the amputation of the finger. That reasoning is not appropriate now that the statute declares that the loss of the use of a member is deemed the same as the amputation of the member.

In Davis v. Gillis, supra, the court said.

"Where an employee's leg is injured so that he must use crutches to walk, he can recover for temporary total disability under Employers' Liability Act No. 20 of 1914, § 8, subsec. (a), notwithstanding the provision in section 8, subsec. 1 (d), which states that 'the permanent total loss of the use of a member shall be equivalent to the amputation of the member.'"

In Chandler v. Oil Fields Gas Co., supra, the plaintiff's ankle was broken, compelling him to use crutches and causing great pain in his leg when he put his foot on the ground. He sued for compensation for the period of his disability, not exceeding 400 weeks, under subsection (b) of section 8 of the Act 43 of 1922, for injury producing permanent total disability to do work of any reasonable character. The defense was that the period of compensation should be limited to 125 weeks, for the loss of the use of the foot, under the new paragraph of subsection

(d), declaring that the permanent total loss of the use of a member shall be equivalent to the amputation of the member. The district judge ruled accordingly, and allowed the compensation for only 125 weeks. The Court of Appeal reversed the ruling and increased the period of compensation to the period of disability, not exceeding 400 weeks.

On the surface, it seems paradoxical to say that, under the Employers' Liability Act, an injured employee might receive justly, under certain peculiar circumstances, more compensation for an injury resulting in partial loss of the use of his hand than he could receive for an injury resulting in the amputation or in the permanent total loss of the use of the hand. But that is not a paradox, for the reason, first, that, when the compensation is allowed under subsection (c), it is fixed at 60 per cent. of only the difference between the wages that were being earned at the time of the injury and the wages which the injured employee is able to earn thereafter, whereas, under subsection (d), the compensation is fixed at 60 per cent. of the total wages that were earned at the time of the injury, and for the further reason that, when compensation is allowed under subsection (c), though limited to 300 weeks, it is also restricted to the period of disability, whereas, under subsection (d), the term of compensation is not limited to the period of disability but is fixed absolutely at 150 weeks. And so, in such case, when the compensation is allowed under subsection (c), although the defendant suffers the disadvantage that the period of compensation might last 300 weeks, he has the two compensating advantages, first, that the rate of compensation is less, and, second, that it might come to an end in a much shorter time than 150 weeks.

[6, 7] There is no occasion for deciding in this case, and therefore we do not decide, whether the period of compensation should be so restricted that the total payments will not exceed 60 per cent. of the wages which

the injured employee was earning at the time of the accident, for the period of 150 weeks. The writ of review was issued at the instance of the defendant only. The plaintiff did not apply for a writ of review, or join in the application to review the judgment of the court of appeal. It is well settled that, in reviewing a judgment of the Court of Appeal, at the instance of one of the parties to the suit, we will not amend the judgment to his prejudice and to the advantage of the party who has not complained. In Ware v. Couvillion, 112 La. 43, 36 So. 220, it was said:

"Where a judgment is ordered up for review, under article 101 of the Constitution, at the instance of one of the parties to a cause, to correct a supposed error of which he complains, the opposing litigant, who has made no complaint and sought no remedy, cannot avail himself of the occasion to have such judgment amended for his benefit."

[8] Therefore, in allowing compensation, under subsection (c) of section 8 of the statute, we shall restrict the period of payments so that the amount of the judgment in favor of the plaintiff will not be increased. The judgment complained of by the defendant is for $18 a week for 81 weeks (allowing for the 19 weeks for which the compensation was paid), making a total of $1,458. The plaintiff is entitled to $15.60 a week, being 60 per cent. of $26, which is the difference between the wages which he was earning at the time of the accident and the wages that he was able to earn afterwards. To limit the payments so that the judgment will not be increased, we shall allow the $15.60 a week for 93 weeks and make the remaining $7.20 payable at the end of the ninety-fourth week. All of the payments are now past due. The last of the 19 installments that were paid by the defendant was paid on the 12th of June, 1924, the day it was due. The first installment of $15.60 under this judgment will bear legal interest, therefore, from the 19th of June, 1924, and each subsequent installment will bear interest from a date one week later; that is, from the day when each payment was due. No allowance will be made for the fact that the defendant payed $18 instead of $15.60 a week for the 19 weeks that were paid for. Subsection 6 of section 8 of the statute declares:

"6. Any voluntary payments made by the employer or his insurer to the injured employee, during the period of his disability, or to his dependents, which, by the terms of this act, were not due and payable when paid, may, subject to the approval of the court, be deducted from the amount to be paid as compensation; provided, that in case of disability, such deduction shall be made by shortening the period during which compensation shall be paid, and not by reducing the amount of the periodical payments."

[9] When this case was pending on rehearing in the Court of Appeal, the attorneys for the defendant filed a motion to have the case remanded to the district court for the introduction of additional evidence of the plaintiff's ability to work. The motion was accompanied by ex parte affidavits. The Court of Appeal, on the authority of Daniels v. Shreveport Producing & Refining Corporation, 151 La. 800, 92 So. 341, which, in effect, overruled Pye v. Southwestern Gas & Electric Co., 147 La. 537, 85 So. 232, and Bourgeois v. Union Bridge & Construction Co., 149 La. 669, 90 So. 17, overruled the motion to remand the case. We affirm the ruling.

The judgment of the district court and of the Court of Appeal is amended so that the plaintiff shall recover of and from the defendant $1,458, and, the amount having been due and payable in 94 weekly payments, commencing on the 19th of June, 1924, 93 of the payments for $15.60 each and the ninety-fourth for $7.20, the defendant is to pay interest at 5 per cent. per annum on each of said deferred payments from the day it was due, commencing on the 19th of June, 1924. As thus amended, the judgment is affirmed at the cost of the defendant.

ST. PAUL, J., dissents.