Plaintiff was employed by defendant at its New Orleans plant as a machinist. On September 29, 1937, while engaged within the scope of his employment, he sustained an accidental injury when a fragment of *Page 36 
metal became embedded in his right eye. On being examined by two eye specialists, they concluded the inadvisability of any further medical assistance. Plaintiff continued at his employment and, about June, 1938, a traumatic cataract appeared on the injured eye, with evidence of the eye "turning out". Though he still continued to work, it was decided to remove the cataract, which was successfully performed on November 2, 1938, the foreign particle being removed at the same time. A few months after the operation there developed what is technically known as "after-cataract", as a result of which plaintiff contends he suffered from a condition known as diplopia, the effect of which is, that his eyes do not reflect the same image in the same position of space, with no power to fix or describe its definite location, a condition known as double vision. Plaintiff urges that, because of this condition, he is permanently incapacitated to perform work of any reasonable character, thus entitling him to compensation under subsection (b) of section 8 of Act 20 of 1914, as amended by Act 242 of 1928, which allows 65 per centum of wages during the period of disability, not, however, beyond four hundred weeks. At the time of the accident plaintiff was earning $26 a week. Hence, in the event of recovery by him in these proceedings, this wage would entitle him to compensation in the sum of $16.90 a week for the period of disability claimed.
Defendant admitted plaintiff's employment, the accidental injury, his rate of pay, and that plaintiff's claim resides within the salutary provisions of the Employers' Liability Act. Act 20 of 1914, as amended. Defendant avers that it paid plaintiff compensation for one hundred weeks and urgently insists that it has discharged its full legal obligation. While conceding that the vision of plaintiff's right eye is seriously impaired, defendant contends that plaintiff has, at least, the normal vision of any one-eyed man, and thus is fully capable of performing work of a character similar to that which he pursued prior to the accident. Therefore, defendant argues that plaintiff's right of recovery should be restricted to the specific injury clause of the statute, supra, that is, subsection (d), paragraph 9, section 8, which provides that, for the loss of an eye, compensation shall be allowed for 65 per centum of wages during one hundred weeks, and that, having paid compensation as thus stipulated, its legal obligation has been discharged.
There is no dispute as to the law involved in the case. Counsel for defendant readily concede that, if plaintiff is permanently and totally disabled from performing work of a reasonable character, he should recover compensation for a period not to exceed four hundred weeks, irrespective of the specific loss of an eye for which he has received full compensation. This is made manifest by the ruling in Black v. Louisiana Central Lumber Company, 161 La. 889, 109 So. 538, 540 wherein the Supreme Court said: "If it is possible for any proposition to be settled by the jurisprudence of a court of justice, it has been settled by the repeated and consistent rulings of this court and of the Courts of Appeal that, under the Employers' Liability Act, the compensation to be paid for an injury producing disability to do work of any reasonable character is determined, not by subsection (e), but by subsection (a), or subsection (b), or subsection (c), or subsection (d), as the case may be."
See, also McGruder v. Service Drayage Co., 183 La. 75,162 So. 806, and Robichaux v. Realty Operators, Inc., 195 La. 70,196 So. 23.
This case, therefore, resolves itself solely into a question of fact, i.e., whether plaintiff's injury is equivalent to the loss of use of his right eye, or whether, by virtue of his injury, he has been rendered permanently and totally disabled from performing work of a reasonable character.
Our learned brother below rendered judgment for plaintiff, granting him compensation under subsection (b), section 8 of the act, supra, in the sum of $16.90 a week for a period not to exceed four hundred weeks, as for permanent and total disability, beginning on November 2, 1938, with legal interest on installments from maturity and subject to credits for weekly installments of $16.90 a week previously paid for the week beginning November 2, 1938, and ending October 1, 1940, or a total credit of $1,690. Defendant has appealed.
The record discloses that plaintiff was injured on September 29, 1937, as a result of a fragment of metal becoming embedded in his right eye. After being examined by a registered nurse regularly employed *Page 37 
by defendant, plaintiff was examined at the offices of Dr. J.B. Gooch, who, in turn, called Dr. Buffington in consultation. They concluded not to disturb the injured eye at that time, but that, should a mature cataract develop, an operation for its removal, together with the imbedded foreign object, would be recommended. Plaintiff continued working, but, he says, hindered by a lack of vision and the painful condition of his eye. It is shown that in June, 1938, a cataract began to form, greatly reducing his ratio of vision, and finally, on November 2, 1938, the cataract and foreign particle were removed by operation by Dr. Gooch.
Plaintiff, thirty-four years of age and a graduate of the Delgado Trades School, testified that he had been constantly engaged as a machinist for thirteen years, never having lacked employment in his trade. He stated that, as a result of the operation, the vision of his right eye has been reduced to such an extent that he is unable to visualize and count fingers of the hand beyond a distance of seven to nine feet, or to distinguish such objects as chairs and picture frames beyond a distance of about twenty to thirty feet. He further stated that, on closing his uninjured eye, all objects appear blurred, while, on closing the injured eye, he has the normal vision of a one-eyed person, with the handicap, however, of being unable to fix and determine depths, angles or distances. He further testified that, in the use of both eyes, he discerns the image of an object, but that the vision of the injured eye produces a heavy shadow slightly to the left, alongside the object, causing it to appear indistinct and smeared, which he attributes to a failure of coordination of the eyes. Plaintiff further testified that the specific functions called for by his trade demand faultless and accurate vision, since they involve work of absolute precision through the use of complicated instruments, tools and machinery, and the construing of blue prints drawn to a small scale; that his duties require him to use instruments to effect measurements, in the cutting of tools and machinery, to a fraction of "one-tenth of a one-thousandth of an inch". He concludes that, as a result of the inability of his eyes to coordinate upon a single object, thereby causing double vision, he is incapable of performing the work of a machinist, or any other work for which he is fitted by skill or experience.
We are afforded the benefit of the testimony of eminent eye specialists. Plaintiff tendered Dr. Arthur Whitmire and Dr. J. Henry Larose in support of his contentions and their findings are in perfect accord. Plaintiff was examined by Dr. Whitmire in February, 1939, and by Dr. Larose on June 6, 1941, the latter examination being about two weeks prior to the trial below. They unhesitatingly state that the operation for the removal of the cataract resulted in a removal of the lens of plaintiff's right eye and that, as a consequence, all coordination in vision has been destroyed. They testified that plaintiff, by the use of the injured eye alone, could count fingers six to nine feet away; that, as a result of the injury, nature has effected some compensation by "turning out" the eye — towards the right — in an effort to remove the hindrance to plaintiff's good eye; that, by the use of lens, a normal vision will be effected, but that plaintiff would still not have the required coordination, nor would double vision, or his inability to perceive depth or the size of images, be remedied. From their findings they testified that plaintiff has double binocular vision, meaning that both eyes are seeing, but are not seeing the same image in the same place at the same time, this condition being termed, technically, "diplopia". They further conclude that plaintiff is totally incapable of engaging in any work which, by training or experience, he has been accustomed to do; that even with the removal of the injured eye, plaintiff would still be unable to approximate distance, or have any perception of depth or angles, and that they would not, under such circumstances, recommend his employment. They stated, also, that plaintiff's condition would not only prove a hazard to himself around moving machinery, but, likewise, a peril to others.
Defendant produced equally eminent eye specialists in Dr. William B. Clark and Dr. J.B. Gooch. They testified that the vision of plaintiff's injured right eye is three two-hundredths and that it has "turned out" about fifteen to twenty degrees. They concede that plaintiff, through the use of the injured eye alone, can visualize and count fingers at a distance of three to four feet and can distinguish large objects at a distance of twenty to thirty feet. Their opinion is that the ratio of visibility of plaintiff's injured right eye is so negligible *Page 38 
that he is not suffering from double vision, or diplopia, and that plaintiff, enjoying normal vision in the left eye is able to perform his usual work just as efficiently as any one-eyed man.
In rebuttal of defendant's medical testimony, Dr. T.J. Dimitry, an equally eminent eye specialist, was tendered, though he had not previously examined plaintiff. He testified that double vision is a natural consequence of plaintiff's injury and the subsequent operation, and that, unquestionably, plaintiff is suffering from diplopia. He stated that, as long as plaintiff can see out of the injured eye, irrespective of the degree that the eye may "turn out", plaintiff shall always suffer from double vision, unless the psychological temperament of plaintiff will, in the course of time, remedy that condition. Dr. Dimitry reached these conclusions not only from the condition of plaintiff as explained to him, but from accepted medical principles and adopted physics. He explained that plaintiff, having no depth perception, cannot see distinctly when gripping an object, or when striking a direct point, and that, to have any degree of safety or efficiency in his work, plaintiff must cover the injured eye. He concluded that plaintiff, for industrial purposes, is in a condition far worse than a one-eyed man, although the injured right eye, with its reduced vision, is of incalculable assistance to him in discerning objects approaching on his right side. Dr. Dimitry further stated that he entertained serious doubt as to whether time or nature would ever suppress plaintiff's present condition.
It is evident, therefore, that plaintiff has not lost the sight of one eye. All of the medical experts agree that plaintiff still enjoys some degree of vision from the injured eye. Plaintiff's testimony confirmed these findings, and it is shown that on the trial below plaintiff, at the suggestion of his counsel, identified various objects in the courtroom with his normal left eye closed. The evidence satisfies us that, because of the reduced vision of the injured right eye, plaintiff is suffering from double vision, this being said by the medical experts to be a natural consequence of the injury and subsequent operation. It is true that, by completely closing the injured eye, or by wearing a piece of green cloth or a dark or frosted glass over it, so as to completely obstruct vision out of it, plaintiff is able to see as well as any one-eyed man. Assuming that to be true, the evidence as borne out by the testimony of the medical experts convinces us that plaintiff still lacks the power of depth perception and visualizing distances, a most serious hindrance, to say the least, in the pursuit of his vocation.
The unquestioned effect of the double vision suffered by plaintiff is totally to disable him from pursuing his occupation as a machinist, or any occupation involving, as necessary to efficiency and safety, precise and accurate estimates of angles, distances, levels, the grinding and fitting of tools and intricate parts of machinery, by the use of complicated instruments and blue-prints drawn to a small scale. He is incapacitated to follow any occupation requiring the use of grinding machines, drill presses, planers, micrometers, reamers et cetera, the essential instruments of a machinist. As a consequence, he is incapacitated to engage in work which he has followed as a trade for thirteen years, or any similar work. We are not informed of any specific occupation that plaintiff is capacitated to follow, this in the use of both eyes, and certainly no work of any reasonable character which he was accustomed to perform either by training or experience.
The case of Knispel v. Gulf States Utilities Company,174 La. 401, 141 So. 9, 12 is relied upon by both litigants, and both concede that our ruling should turn solely upon our interpretation of that case. The Supreme Court found in the cited case that plaintiff was suffering from an injury causing double vision and that, since the employee had not lost an eye, nor the total use of one, the rate of compensation was not to be governed by the statute relative to the loss of an eye. After concluding the existence of double vision, the court said: "The disability should, we think, be deemed total to do work of any reasonable character, within the intendment of the law, whenever it appears that the employee, due to the injury, is unable to perform work of the same or similar description that he is accustomed to perform. When he is unable to perform such character of work, his occupation, due to the injury received in his employer's service, has been taken from him, and he is in the world without an occupation. In his position he is wholly incapacitated, and what little he may learn or be able to do thereafter will likely be done under *Page 39 
greater difficulties, placing him at a disadvantage even in securing what work he may be able to perform. Cf. Bradbury's Workmen's Compensation, p. 235, § 2."
It is manifest that the doctrine announced in the Knispel case, supra, is clearly apposite to the case at bar and is decisive of defendant's liability. We resolve, therefore, that plaintiff's injury totally and permanently incapacitates him from engaging in work which his training and experience calls for, or for any work of any reasonable or similar character, he being thus entitled to compensation in the amount and for the period claimed. Should nature or time effect a complete, or practically complete, recovery, and thus afford him the privilege of resuming his trade, or other occupation of a reasonable character, the law provides a means of modifying the judgment so as to make it comply with the changed conditions.
The court a qua, having found for plaintiff, we conclude that his findings are in complete accord with the evidence and law applicable.
For these reasons, the judgment appealed from is affirmed at the cost of appellant.
Affirmed.