141 So. 9

**KNISPEL v. GULF STATES UTILITIES CO., Inc.**

No. 31552.

Feb. 29, 1932.

Rehearing Denied March 30, 1932.

Cline, Plauche & Thompson, of Lake Charles, for plaintiff.

Pujo, Bell & Hardin, of Lake Charles, and Thatcher, Browne, Porteous & Myers, of Shreveport, for defendant.

OVERTON, J.

Plaintiff was in the employ of defendant as a lineman. On May 22, 1929, while engaged within the scope of his employment, in the alteration of a high voltage electricity transmission line, he fell from a pole. As a result of his fall he received severe injury to his right eye, his left arm and his pelvis. He alleged that these injuries have incapacitated him permanently to perform work of any reasonable character. The injuries to his arm and his pelvis have passed out of the case, leaving the injury to his eye for consideration. When the accident occurred, plaintiff was earning approximately $62.50 a week. In the event of his recovery in these proceedings, this wage would entitle him to the maximum compensation, under the law, of $20 a week.

Defendant does not question that plaintiff is entitled to some compensation, but urges that, at best, it should not exceed $20 a week for 100 weeks, since the injury to his eye falls within subsection (d), par. 16, of section 8 of Act No. 242 of 1928, p. 357, which, for injuries falling under it, provides for such compensation as is reasonable and as is in proportion to the compensation specifically provided in the cases of specific disability, not to exceed 65 per centum of wages during one hundred weeks, or, if the injury does not so fall, then that it falls within subsection (d), par. 9, of section 8 of the act, which provides that for the loss of an eye compensation shall be allowed for 65 per centum of wages during one hundred weeks. Defendant also contends that, in the event it should be held that the injury falls within subsection (d), par. 16, then, in the proper application of the law, the maximum compensation there allowed should be reduced to 15 per centum disability, or fifteen weeks compensation, because the injured eye is affected only fifteen per centum of its normal vision when both eyes are used.

On the other hand, plaintiff urges in his brief that, if he has established the allegations of his petition, he is entitled to compensation under subsection (b) of section 8 of the act of 1928, which allows as compensation for injury producing permanent total disability to do work of any reasonable character, 65 per centum of wages during the period of disability, not, however, beyond four hundred weeks. He also urges that,

should the court find that his disability, though total is only temporary, then he is entitled to compensation under subsection (a) of section 8 of the act, which provides the same compensation, during the period of disability, as does subsection (b), not to exceed, however, three hundred weeks.

The district court rendered judgment for plaintiff, allowing him compensation, under subsection (b) of section 8, in the sum of $20 a week for four hundred weeks, as for permanent total disability, amounting to $8,000, payable in weekly installments of $20, beginning on May 22, 1929, with 5 per centum per annum interest on installments from maturity, subject to credits for weekly installments of $20 a week, paid for the weeks beginning May 22, 1929, and ending July 19, 1930. The Court of Appeal entertained a view of the case in conflict with that of the district court, and found that the right to compensation fell under subsection (d), par. 16, of the act of 1928, and accordingly amended the judgment of the district court, so as to reduce the period of time during which compensation was allowed from 400 weeks to 100 weeks, allowing the same credits as the district court allowed, and, as thus amended, affirmed the judgment.

The defect in plaintiff's vision is caused by paresis of the superior oblique muscle of the right eye, brought about as the direct result of his fall from the pole supporting the transmission wires. This injury to the eye causes plaintiff to see double when his head is in certain positions, that is, to see two objects where there is only one—a condition known as diplopia. The vision in either eye, when the other is closed, is 20-20, which is normal. However, with both eyes open, when the first examination was made, which was in November, 1929, the injury to the right eye caused a defect in visibility in that eye of 20 per cent., and when the second examination was made, some eleven months later, this defect in visibility had fallen to 15 per cent., showing an improvement of 5 per cent. during that period.

With the injured eye completely closed by sewing the lid down—which seems to be an approved method—or should plaintiff wear a piece of green cloth over the injured eye, or a dark or a frosted glass over it, so as to completely obstruct vision out of it, any one of these methods will enable him to see as well as any one-eyed man. If plaintiff should lose his uninjured eye, the injured eye could be used then with the same effect as was the uninjured eye, for with either eye closed plaintiff is able to see as normally as a one-eyed man, out of the injured or the uninjured eye, without reference as to which is left open. The double vision may be reduced by the use of a prism glass over the defective eye, but by such method it cannot be entirely eliminated.

The effect of the double vision is totally to disable plaintiff from pursuing his occupation as a lineman, or any occupation involving, as necessary to safety, accurate estimates of distances and levels. He is incapacitated to follow any occupation requiring the use of cutting instruments, or requiring the driving of nails, or the doing of work from a scaffold. He is therefore incapacitated to do the work of a carpenter or any work similar to his occupation as a lineman.

In addition to the work of a lineman, plaintiff is trained in structural iron work and

in radio work, but these lines, it is obvious from the foregoing, he is incapacitated to pursue. The record shows no specific occupations that he is capacitated to follow, when he uses both eyes, except those of porter and night watchman.

Subsection (d), par. 16, of section 8 of the Act of 1928, under which the Court of Appeal classified plaintiff's injury, reads as follows:

"In cases not falling within any of the provisions already made where the employee is seriously permanently disfigured about the face or head or where the usefulness of a physical function is seriously permanently impaired, the Court may allow such compensation as is reasonable and as is in proportion to the compensation hereinabove specifically provided in the cases of specific disability, not to exceed sixty-five per centum of wages during one hundred weeks."

█ The Court of Appeal was in error in fixing plaintiff's compensation under this paragraph. The injury suffered by plaintiff is an injury affecting his capacity to work. Wherever such is the case compensation therefor is not governed by subsection (d), par. 16, of section 8 of the act of 1928, but by those provisions of the act, relating to compensation for injuries producing disability to work, such, for instance, as subsections (a), (b), and (c) of section 8. This is made clear by the ruling in Black v. Louisiana Cent. Lumber Co., 161 La. 889, 109 So. 538, 540. That case arose under Act No. 43 of 1922. That act contained a subsection, designated as (e) of section 8, which, in all respects, is similar to subsection (d), par. 16, of section 8 of the Act of 1928, save that subsection (e) of section 8 of the act of 1922 not only provided for compensation, as does

subsection (d), par. 16, of the act of 1928, where the usefulness of a physical function is seriously permanently impaired, but also made like provision where the usefulness of a member is so impaired, and also provided a slightly lower compensation than does the corresponding subsection in the act of 1928 —differences which in no manner detract from the applicability of the ruling in the Black Case to the present case. In the Black Case it was said:

"If it is possible for any proposition to be settled by the jurisprudence of a court of justice, it has been settled by the repeated and consistent rulings of this court and of the Courts of Appeal that, under the Employers' Liability Act, the compensation' to be paid for an injury producing disability to do work of any reasonable character is determined, not by subsection (e), but by subsection (a), or subsection (b), or subsection (c), or subsection (d), as the case may be. * * * *"

█ We adhere to the ruling in the Black Case, and consider it decisive of the inapplicability of subsection (d), par. 16, to this case. Such being our appreciation of the jurisprudence of this state, it follows that the right to compensation for the injury in this case is controlled by subsection (a) of section 8 of the act of 1928, relative to temporary total disability to do work of any reasonable character, or by subsection (b) thereof, relative to permanent total disability to do work of such character, or subsection (c), relative to partial disability to do work of that character. We feel that the case is not governed by subsection (d), par. 9, relative to the loss of an eye, even when aided by paragraph 14 of that subsection, for, though an eye may be considered a "mem-

ber" as well as an "organ," under the terminology of the act, nevertheless plaintiff has not lost an eye nor the total use of one.

The district court found that under the law the injury was permanent, although there was some slight hope of recovery, and that therefore the injury produced permanent disability. The Court of Appeal entertained very much the same view, for it said: "The prospect of improvement seems so uncertain to us that, for the purpose of our decision, we attach no weight to that hope. * * *" Our review of the evidence leads us to the same conclusion. One of the specialists who took the stand testified that it was hard to say whether the injury was temporary or permanent, but was inclined to the view that it was permanent. Another specialist testified, when asked the question whether the double vision was likely to increase or more likely to decrease with time, replied that "the double vision will probably decrease somewhat, but how much cannot be foretold."

■ Our conclusion, therefore, is that plaintiff's injury should be regarded as permanent, for no expert who took the stand is able to say to the contrary, and the Employers' Liability Act is to be interpreted with reasonable liberality in favor of the employee. Should time disclose a complete or practically complete recovery, the law provides a means of modifying the judgment so as to make it comply with the changed conditions.

It must now be determined whether the disability is partial or total. The district court found that it was total. The Court of Appeal found that it was not.

■ The disability should, we think, be

deemed total to do work of any reasonable character, within the intendment of the law, whenever it appears that the employee, due to the injury, is unable to perform work of the same or similar description that he is accustomed to perform. When he is unable to perform such character of work, his occupation, due to the injury received in his employer's service, has been taken from him, and he is in the world without an occupation. In his position he is wholly incapacitated. and what little he may learn or be able to do thereafter will likely be done under greater difficulties, placing him at a disadvantage even in securing what work he may be able to perform. Cf. Bradbury's Workmen's Compensation, p. 235, § 2.

It is obvious that defendant cannot perform the work of a lineman, and, in all likelihood, will never be able to perform it. It is equally clear that he cannot perform the work of a structural iron worker or a radio mechanic, and, so far as appears, never will be able to do so. He is trained in nothing else. Should he wear a prism glass, his wearing of it would reduce the double vision. It must not, however, be understood from this that his wearing of it would enable him to continue in his occupation or in any similar occupation, for the prism glass does not remedy, but merely reduces, the double vision. The object in wearing the prism glass is to reduce, while wearing it, the double vision, and to bring about, if possible, an improvement in, or a complete recovery from, the defect. It is true that by completely closing the injured eye by sewing the lid down, or by wearing a piece of green cloth over it, or by completely obstructing the view from it with a dark or a frosted glass, plaintiff will

be able to do any work that a one-eyed man can do. The record does not seem to inform us whether so doing would enable him to continue in the work he has been performing, but the very silence of the record on that point causes us to doubt that he could. But be that as it may, to require such a course of plaintiff would be, in effect, to condemn him to a surrender of all chance he may have of the complete restoration of his sight. It is only by using both eyes together, and by exercising them, that plaintiff may hope for the complete restoration of his sight, else why furnish him with a prism glass, which only reduces the defect in vision, instead of using the method of closing the eye, which obviates entirely the double vision. Touching the right to require this of plaintiff, the trial court said:

"And so long as there remains a reasonable chance—or perhaps any chance—that good vision by means of both eyes may be restored, the owner of the eye cannot be expected to sacrifice that chance by closing one of the eyes and remaining ever afterward a one-eyed man."

For these reasons, the judgment under review is set aside, and the judgment of the district court is reinstated, defendant to pay the costs.