HARDY, Judge.
This is a compensation suit in which plaintiff claims total, permanent disability as the result of an accident sustained while in the course of his employment. After trial there was judgment in favor of plaintiff in the sum of $30 per week for a period not exceeding four hundred weeks, together with an allowance of $580.00 for medical and hospital attention and service, from which judgment defendants, the employer and its insurer, have appealed.
The alleged injury suffered by plaintiff was what is known as a detached retina of the left eye which caused the permanent and total loss of vision in said eye, together with some impairment of the vision of the right eye. Plaintiff contends that on or about October 14, 1952, while performing his duties as a millwright in the employment of the defendant, Urania Lumber Company, Ltd., he received a hard jolting blow on the top of the head when he came in contact with a moving pulley on a drive shaft, and that said accident in the course of some ten weeks immediately following resulted in serious visual disturbances of the left eye. On or about December 26, 1952, plaintiff reported to Dr. Tan-nehill, the company doctor, complaining of trouble with his eye due to emery dust. He was referred to Dr. Simmonds, an eye specialist of Alexandria, who made an examination of plaintiff the following day, December 27th, and determined that he was suffering from a detachment of the retina. Dr. Simmonds performed an operation on January 2nd in an unsuccessful effort to save the sight of the eye.
The only questions involved are, first, whether the accident of October 14th was the effective cause of the retinal detachment, and, second, if so, whether plaintiff is totally disabled from following the occupation of a millwright as the result of the loss of an eye.
There are a number of unusual factual circumstances which are involved in the *15 consideration of this case. When plaintiff consulted Dr. Tannehill on December 26th and was examined by Dr. Simmonds on December 27th he complained of trouble with his eye resulting from blurring of vision which he attributed -to the effect of getting emery dust in the eye a few days previously. Dr. Simmonds originally reported that the emery dust had no bearing upon the condition of the eye. Apparently on the basis of this report plaintiff’s claim for disability was rejected as not being compensable. However, Dr. Simmonds testified that on April 27, 1953, plaintiff first informed him of the blow he had accidentally received to his head on October 14, 1952. There is no explanation as to why plaintiff made no mention of the head injury for a period of more than six months. This circumstance might cast serious doubt as to the actual occurrence of any such accident were it not for the fact that the record contains plaintiff’s testimony as to the accident which is corroborated in detail by the testimony of a fellow employee who witnessed the accident and assisted plaintiff to his feet after he had been knocked to his knees by the force of the blow from the moving pulley. The uncontradicted testimony of these two witnesses cannot be disregarded.
Counsel for defendants urgently argues that, even conceding the occurrence of the accident, it is so remote in time and so free from any causal connection with the retinal detachment that it can be considered only as a possible cause. In support of this position it is contended that the testimony of Dr. Simmonds and of plaintiff’s medical witness, Dr. Fendler, also an eye specialist, supports a causal connection only upon the ground of possibility. The force and effect of this argument is obvious for, if accepted, it would place this case in the category of those which present a purely speculative foundation for a conclusion of accidental injury resulting in disability.
However, it is to be remarked that both medical experts unequivocally testified that indirect trauma, that is, a blow to the head, not necessarily to the eye itself, is recognized as a cause of retinal detachment. In this connection Dr. Simmonds, who examined plaintiff and performed the operation testified positively:
“If he can prove he got hit on the head I would accept that as cause of the detachment without question.”
While it is true that the blow and the subsequent retinal detachment may have been coincidental, and while it is further true that the causal connection between the head trauma and the detached retina have not been established with ab-. solute and indisputable certainty, we think that the connection has been fixed within the bounds of the required legal certainty. The corroborated testimony of the accident of October 14th, and the testimony of plaintiff’s excellent work record going back for a period of some forty years with only one compensation claim covering payment for two weeks disability are factors which must be taken into consideration. The facts of the instant case are remarkably similar to those considered by our brothers of the Orleans Court in Cook v. M. J. Walsh Boiler Scaling Co., La.App., 40 So.2d 655, in which judgment was awarded to the claimant.
After careful review of the record we find no ground which would justify a finding of manifest error as to the judgment rendered, nor as to the written reasons assigned by the district judge in support thereof.
We think it is clear that the injury has effected total and permanent disability. The record amply sustains a conclusion ■ that a man who has sustained the loss of the vision of one eye is incapacitated for the performance of the duties of a millwright. This particular calling requires a reasonably high degree of skill in connection with the operation of machinery; the use of precision and power tools; close contact with and attention to machinery in actual. operation and the performance of 'duties and functions which in our opinion unquestionably require the use of both eyes. We believe this particular issue was definitely determined by our holding in the *16 case of McDearmont v. M. I. Davis Co., La.App., 64 So.2d 473 (certiorari refused).
There is some testimony to the effect that plaintiff might learn, over a considerable period of time, to compensate for the loss of the vision of one eye to such extent as to permit him to perform the duties of millwright. We are not greatly impressed by this possibility, particularly in view of the fact that plaintiff is now over sixty-five years of age. We have no hesitancy in stating that the development of such an ability by one of plaintiff’s age is not only speculative in the extreme but would involve the subjection of plaintiff and his fellow employees to serious danger.
For the reasons assigned the judgment appealed from is affirmed at appellant’s cost.