BOLIN, Judge.
This suit arose out of a claim under the Workmen’s Compensation Act by Elbert S.Sykes against his employer, Stout Drilling Company, Inc., and his employer’s insurer, Employers Mutual Liability Insurance Company of Wisconsin.
Sykes, a 48 year old man, was engaged as a driller’s helper with Stout Drilling Co., Inc., and was so employed on January 18, 1957. There is no dispute that the plaintiff was struck in the eye by a clamp attached to a cable or “cat line”. This blow caused a detachment and lateral tear of the retina of plaintiff’s right eye.
The plaintiff continued to work on this job until January 29, 1957, at which time the work by the defendant employer on this well was completed. During the time he continued to work following the accident, plaintiff suffered with an irritation of the right eye and was referred to Dr. Boles, an ophthalmologist, who performed an operation on him for the correction of a detached retina on February 22, 1957.
Plaintiff remained in the hospital following the operation for a period of four weeks and was required to wear pinpoint glasses for five weeks thereafter. He did not return to work as an oil field worker and subsequently secured employment with the Richland Parish Police Jury as a road worker. Compensation payments were made until May 20, 1958, at which time they were discontinued on the premise that plaintiff’s recovery was sufficient to permit him to return to work.
The medical testimony was elicited from Dr. Phillips of Monroe on behalf of plaintiff and Dr. Boles of New Orleans for de *202 fendant. It was conceded by all parties that they were well qualified, and both specialized in diseases of the eyes. The testimony of Dr. Phillips showed that he estimated the loss of vision of plaintiff’s right eye as being 41-42 per cent. Dr. Boles made the estimate of 20 per cent loss of vision.
The district judge, on sound basis of authorities cited in his opinion, concluded that the plaintiff was totally and permanently disabled from doing oil field work of a hazardous nature. We quote from his written reasons:
“The Court concludes from the cases cited above and others that Mr. Sykes was to all intents and purposes totally and permanently disabled from doing any oil field work of a hazardous nature, such as roughnecking, which was his vocation while employed.”
However, finding that plaintiff had been engaged in, and receiving income from, the occupation of farmer and road maintenance laborer in addition to his income as an oil field worker, he concluded that plaintiff should be compensated on a “proportionate basis” and therefore limited his judgment to the duration of the disability not to exceed 300 weeks.
The lower court rejected the employee’s demands for penalties and attorneys fees under the penalty provisions of the insurance code.
The defendant appealed from the. judgment of the court below and plaintiff answered the appeal asking for an amendment to the judgment extending the liability of the defendant to the full 400 weeks for permanent and total disability. By his answer, the plaintiff is again urging his claim for penalties.
The questions presented for determination are: first, the correctness of the trial court’s finding of permanent and total disability; second, the correctness of the application of “proportionate loss” in assessing the liability for payments; and third, the appropriateness of penalties and attorney’s fees.
In connection with the questions presented herein for determination, it might also-be said that we have before us, in a very strict sense, the interpretation of the Workmen’s Compensation Statute. LSA-R.S. 23:1221, sets forth the schedule of payments to be made for various types of injuries, and the pertinent paragraphs thereunder which should be considered in connection with this case are as follows:
“(1) For injury producing temporary total disability to do work of any reasonable character, sixty-five per centum of wages during the period of disability, not beyond three hundred weeks.
“(2) For injury producing permanent total disability to do work of any reasonable character, 65 per centum of wages during the period of disability, not beyond four hundred weeks.
“(3) For injury producing partial disability to do work of any reasonable character, 65 per centum of the difference between wages at the time of injury and wages which the injured employee is able to earn thereafter during the period of disability, not beyond three hundred weeks.
“(4) In the following cases the compensation shall be as follows:
* * * * * *
“(i) For the loss of an eye, sixty-five per centum of wages during one hundred weeks.
jJ? >fc jf: ;J< jjc jf:
“(o) In all cases involving a permanent partial loss of the use or function of the members mentioned hereinabove, compensation shall bear such proportion to the amounts named herein for the total loss of such members as the disability to such members bears to the total loss of the member, provided that in no case compensation for an injury *203 to a member exceed the compensation payable for the loss of such member.”
We think that the trial judge was eminently correct in his finding of fact that the plaintiff was totally and permanently disabled to do the type of work that he was doing at the time of the injury, and that this condition was a result of the accidental injury in question. He suffered a serious and permanent impairment of the vision of his right eye. Both of, the doctors who testified in the case agreed that the visual impairment was permanent and their only disagreement was to the extent and effect of same. Dr. Phillips, who had examined him regularly, was of the opinion that he could not resume the type of work that he was doing at the time of his injury without being a hazard to both himself and his fellow employees.
There was also some lay testimony from experienced oil field workers that a “roughneck” with impaired vision would be unable to carry on the varied and dangerous tasks of such work without endangering himself and his fellow employees. The transcript of testimony is replete with evidence to substantiate a finding that the work of a roughneck involves technical skill. He is required to work on the floor of a drilling rig with other men in a team operation, which involves close contact in precision fashion. One mistake on the part of, a floor hand, such as putting the giant tongs just below, instead of just above, the join-der of two sections of pipe could very easily result in a disaster to the entire floor gang.
In other words, this case narrows itself down to a question of whether or not an oil field worker, who performs duties of a roughneck, is totally and permanently disabled under sub-section two of the above statute, as a result of an injury, which permanently impairs his vision and makes his continued work in the same type of occupation both dangerous and difficult. We are of the opinion that the question presented in this case has been definitely decided by the Supreme Court of Louisiana, and reaffirmed several times, both by the Supreme Court and our Courts of Appeal. The case that has often been referred to as the “landmark” of our jurisprudence establishing the rule of total and permanent disability when an- employee is rendered unable to return to work on the same, or some similar described work is Knispel v. Gulf States Utility Company, Inc., 1932, 174 La. 401, 141 So. 9, 12. In that case a lineman suffered a 20 per cent loss of vision to his right eye, coupled with double vision, and our Supreme Court held that he was totally and permanently disabled within the intendment of the Workmen’s Compensation Statute. In that case the Court used the following language:
“The disability should, we think, be deemed total to do work of any reasonable character, within the intendment of the law, whenever it appears that the employee, due to the injury, is unable to perform work of the same or similar description that he is accustomed to perform. When he is unable to perform such character of work, his occupation, due to the injury received in his employer’s service, has been taken from him, and he is in the world without an occupation. In his position he is wholly incapacitated, and what little he may learn or be able to do thereafter will likely be done under greater difficulties, placing him at a disadvantage even in securing what work he may be able to perform.”
Again the Supreme Court of Louisiana was faced with the same problem in the case of Wright v. National Surety Corporation et al., 1932, 221 La. 486, 59 So.2d 695. In this case, the employee was the operator of an asphalt machine, and he suffered an injury to his right arm. The court found that he was -totally and permanently disabled within the meaning of the Workmen’s Compensation Act, because he could not successfully operate the heavy equipment after his injury, and it mattered *204 not that the injury did not disable him from driving a light truck.
In the case of Brannon v. Zurich General Accident and Liability Insurance Company, 1953, 221 La. 161, 69 So.2d 1, 2, the Supreme Court of Louisiana again reviewed this question and by very strong language, apparently attempted to forever put to rest the identical question now before us. The claimant in the cited case was a carpenter who had suffered an injury to his kneecap, which resulted in an operation. The Court of Appeal, 61 So.2d 257, 259, concluded, despite its finding of fact, that “there are certain functions [of his trade, as a carpenter,] which the plaintiff cannot perform or can perform only with pain or with an increase in the normal hazards of his occupation,” that the carpenter was only partially disabled. The Court of Appeal based its decision on the case of Morgan v. American Bitumuls Company, 217 La. 968, 47 So.2d 739. In reversing the Court of Appeal, the Supreme Court used the following very strong language:
“ Obviously the court in concluding, as contended by defense counsel, that the Morgan case reflects a reversal of our jurisprudence that an employee who is by training, experience, status, and education, engaged in a specialized trade and his injury prevents him continuing in that trade, is totally and permanently disabled within the meaning and contemplation of the compensation statute of this state, failed to take into consideration our subsequent decision in Wright v. National Surety Corporation, 221 La. 486, 59 So.2d 695, where this identical contention was urged and decided to the contrary, this court reiterating what had been, since Knispel v. Gulf States Utilities Company, 174 La. 401, 141 So. 9, our well settled jurisprudence, by quoting with approval from the Morgan case [217 La. 968, 47 So.2d 741] the statement that disability ‘to do work of any reasonable character’ within the intendment of the statute means ‘disability to perform work of the same or similar description, kind or character (not necessarily the identical position) to that which the claimant was accustomed to perform or was undertaking when the injury occurred.’
“ There is, of course, no hard and fast rule that can be laid down for guidance in the application of this rule to the limitless variations of fact presented to the courts. Each case must stand on its own peculiar facts. As pointed out in the Wright case [221 La. 486, 59 So.2d 697], ‘The question here, as in all cases, is whether plaintiff is “disabled to do work of any reasonable character” within the intendment of the compensation statute’.
“ In light of the facts in the instant case the plaintiff is, in our opinion, permanently and totally disabled within the meaning and contemplation of this law. The law does not expect, and does not contemplate, that a worker, in order to make a living, must work in pain, or that he do so when it will materially increase not only the hazards to his own health and safety, but also to those of his fellow employees. This is the settled jurisprudence of all of the appellate courts of this state. See, Knispel v. Gulf States Utilities Co., Inc., 174 La. 401, 141 So. 9; Stieffel v. Valentine Sugars, Inc., 188 La. 1091, 179 So. 6; Carlino v. U. S. Fidelity & Guaranty Co., 196 La. 400, 199 So. 228; Lee v. International Paper Co., La.App., 16 So.2d 679; Brown v. Furr, La.App., 19 So.2d 283; Schneider v. Travelers Insurance Co., La.App., 172 So. 580; Hibbard v. Blane, La.App., 183 So. 39; Rigsby v. John W. Clark Lumber Co., La.App., 28 So.2d 346; Murphy v. B. Mutti, Inc., La.App., 166 So. 493; Godeaux v. Travelers Ins. Co., La.App., 58 So.2d 427; Anders v. Employers Liability Assur. Corp., La.App., 50 So.2d 87; *205 Stansbury v. National Auto & Cas. Ins., Co., La.App., 52 So.2d 300; and Newsom v. Caldwell & McCann, La.App., 51 So.2d 393. See, also, the additional authorities cited and discussed by Malone in his work on the Louisiana Workmen’s Compensation Law and Practice, Sections 272-275.”
It is, therefore, clear to us that the trial judge was in error when he applied any other provisions of the Workmen’s Compensation Law to the employee herein except the subsection dealing with total and permanent disability. Having decided the case on this point, it is not necessary for us to further discuss the following questions raised by the defendant:
1. The amount of the disability payment as partial disability under LSA-R.S. 23:-1221, subsection (3).
2. The defense that this injury should be compensated under the provisions of the workmen’s compensation law pertaining to the permanent partial loss of the use or function of a specific member (Section 1221 (4) (o).
The remaining question to be decided is whether or not the judgment below was correct in refusing to assess penalties and attorneys fees. We find that the refusal of the defendant insurer was not “arbitrary, capricious, or without proper cause”, under LSA-R.S. 23:1201.2, in light of the report of Dr. Boles that the employee had some residual disability to his eye, but did not express an opinion that he was unable to resume his work. It might additionally be said, that the entire record in this case could certainly leave no doubt in any person’s mind that there was a serious and well-founded dispute among the parties as to amount of compensation due herein. This is, therefore, not a case for the assessment of the harsh provisions of the penalty statute.
It is, therefore, ordered that the judgment of the district court be amended so as to award the plaintiff the maximum weekly compensation for permanent and total disability for a period not exceeding 400 weeks, and as amended, the judgment is affirmed, at appellant’s cost.