YARRUT, Judge.
This is a direct action brought against the compensation insurer of the employer of plaintiff for total and permanent disability for 400 weeks, plus penalties and attorney’s fees for arbitrarily and capriciously refusing to make payments as provided by LSA-R.S. 22:658.
The defendant appeals from a judgment awarding plaintiff full compensation for 400 weeks for total and permanent disability, plus penalties and attorney’s fees, and for failure of the trial court to allow credit for weekly compensation payments made from June 24, 1959 to April 12, 1960.
Plaintiff was employed by the “Griener Auto Parts”, defendant’s insured, to do machinist work, which consisted of heavy lifting, hammering and cutting of metal parts; sanding, grinding, and seating of valves and metal materials which required normal vision. In the course of his employment, a piece of steel struck plaintiff in his left eye, causing a corneal laceration, laceration of his lens capsule, and a traumatic cataract of that eye, which required a surgical operation to remove the cataract and corneal lens, to replace which plaintiff was fitted with a contact lens.
Defendant admitted plaintiff’s injury, but contends that, as a result of the surgical operation and the fitting of a contact lens, plaintiff was restored sufficiently to again perform the work he was doing at the time of his injury; but, alternatively, pled that the most plaintiff should recover would be for 100 weeks for the specific loss of an eye, as provided by LSA-R.S. 23:1221 (4) (i), instead of 400 weeks for total and permanent disability under LSA-R.S. 23:-1221(2).
The trial judge found: That plaintiff was employed by an automobile supply house which furnished to automobile service stations and repair shops equipment used by them, consisting of hydraulic lifts, grease guns and similar equipment; that in the course of his duties, plaintiff had to use electric saws, electric drills, chisels (though not electric chisels), and electric hammers, and was required at times to install equipment at a height of twelve to eighteen feet, requiring him to work from a two-foot wide scaffold resting upon and extended between the rungs of ladders, which he climbed with equipment weighing from six to eighty pounds; that two qualified ophthalmologists testified; Dr. Des Bordes, for plaintiff, that plaintiff could not work on scaffolds and perform the duties he performed when injured; and Dr. Baldone, for defendant, that plaintiff could perform such duties either by the use of contact lens or by closing one eye with a patch; and that plaintiff could work with-ottt hazard to himself or to others, but did concede, however, that plaintiff’s field of vision would be one-fifth less than that of a normal person.
In summation, the District Court, in his written reasons, said:
“It is the opinion of the Court, considering all the evidence, that it would be a hazard to the plaintiff himself, as well as to others, to have him perform his former duties. He stated that he cannot tolerate the contact lens, which he does not use, and in my opinion it is impossible, under the law, to force him to wear a patch over his eye and perform these duties. Even with the use of the contact lens and patch, he would have diminished vision which was expressed as 20/25-1 which Dr. Baldone explained was a little less than normal vision.
“Defendant stopped the payment of compensation because of the report of Dr. Baldone, dated April 12, 1960, in which he stated that plaintiff had com *76 pletely recuperated from the cataract extraction, had been discharged from care, and that the case was closed. However, nothing in the record shows that plaintiff was able to return to his duties. The Court cannot condone the stopping of compensation under such conditions. Accordingly, the Court will allow the penalties and attorney’s fees in the matter, together with compensation for four hundred weeks for total disability.”
At the outset, it is apparent that the trial judge, through oversight, failed to give credit for the compensation payments made, as admitted by plaintiff in his petition, for the period June 24, 1959 to April 12, 1960.
The two issues in the case are: (1) whether plaintiff is entitled to recover for the loss of an eye, as a specific injury provided by the statute, or for total and permanent disability, and (2) whether this case warrants the imposition of 12% penalties and attorney’s fees for arbitrary and capricious refusal under LSA-R.S. 22:658.
With reference to the first issue, we agree with the findings of fact and conclusions of the trial court that plaintiff cannot do the same or similar work as he was doing at the time of injury. Knispel v. Gulf States Utilities Co., 174 La. 401, 141 So. 9; McDearmont v. M. I. Davis Co., La.App., 64 So.2d 473; Duke v. Urania Lumber Co., La.App., 73 So.2d 13; Trahan v. Louisiana State Rice Milling Company, La.App., 100 So.2d 914; Monk v. Louisiana Forestry Commission, La.App., 124 So.2d 351.
In the case of McDearmont v. M. I. Davis Co., supra, a mechanic, while repairing automobile bodies and fenders, lost the sight of his right eye when a part of a revolving disc of an electric grinder broke and -struck him in the eye. He could drive a truck, but could not perform precision work he had previously done without difficulty, without taking longer for completion, and without danger to himself and fellow employees. Plaintiff was allowed compensation for permanent and total disability instead of only partial disability for the loss of an eye. This case parallels the facts of the cited case.
However, because of the serious dispute as to whether or not plaintiff was entitled to compensation for specific injury, or for total and permanent disability, and the fact that defendant paid compensation for some 43 weeks and offered, in its answer, to make payments under the specific disability provision for 100 weeks; the diametrically opposite opinions of the two ophthalmologists; and that plaintiff was examined for and obtained a license to drive an automobile, which he was doing without trouble or mishap, we do not think the penalties for arbitrary and capricious refusal should be invoked here against the defendant. Sykes v. Stout Drilling Co., La.App., 124 So.2d 200.
“Arbitrary” and “capricious” in many respects are synonymous terms. “Capricious” means freakish, whimsical, fickle, changeable, unsteady, arbitrary. See Vol. 3A Words and Phrases, Arbitrary, p. 569.
The mere fact that an insurer is not successful in its contention is not alone sufficient to conclude it has been arbitrary and capricious, otherwise it would be compelled to litigate without the equal protection of the law.
The judgment as to the allowance of penalties and attorney’s fees as damages for arbitrary and capricious refusal is reversed. However, the fee of plaintiff’s attorney is fixed at 20% of the first $5,000.00 and 10% of the balance of the amount payable to plaintiff under this judgment, as provided by LSA-R.S. 23:1141 (as amended in 1958), to be payable out of the award, plus interest at the legal rate from the date of suit, September 9, 1960, until paid.
Accordingly, the judgment appealed from is amended so as to allow defendant credit for 43 weeks compensation already paid, *77 but is reversed with respect to the allowance of penalties and attorney’s fees as damages for arbitrary and capricious refusal. The judgment allowing 20% attorney’s fees to plaintiff’s attorney, not to exceed $1,000.00, is amended to allow 20% on the first $5,000.00 and 10% on the balance of the award, and payable out of the award, as provided by LSA-R.S. 23:1141, as amended. Except as amended or reversed, in all other respects the judgment is affirmed; defendant to pay all costs.
Reversed in part; amended and affirmed in part.