REGAN, Judge.
The plaintiff, Junius Williams, filed this suit against the defendants, Equitable Equipment Company and The Aetna Casualty and Surety Company, its workmen’s compensation insurer, endeavoring to recover the sum of $14,000.00, which he asserts he is entitled to as the result of his total and permanent disability caused by the loss of the first joint of his left middle finger during the course of his employment by the Equitable Equipment Company.
The defendants answered and denied that the plaintiff had been rendered totally disabled by the accident. They then explained that their physician had advised them that the plaintiff had incurred a fifty percent loss of function of the middle finger; consequently, they conceded that he was entitled to scheduled benefits pursuant to the rationale of R.S. 23:1221(4), and tendered the relevant amount without prejudice to plaintiff’s right to pursue any additional claim.
Following a trial on the merits, judgment was rendered in favor of the plaintiff awarding him compensation for a period not to exceed 300 weeks for total temporary disability. The court also ordered the plaintiff to submit to injection therapy for his injured finger within a period of thirty days from the date of the signing of the judgment, and stipulated that the com.pensation awarded was to cease in the event of the plaintiff’s refusal to undergo such treatment within thirty days.[1] From that judgment, the defendants, have prosecuted this appeal.
The record discloses that on October 6, 1967, the plaintiff, while in the employ of Equitable Equipment Company, incurred an injury to the tip of his left middle finger. He was referred to a general practitioner, Dr. J. H. Retry, who in turn referred him to Dr. Luis Matta, an orthopedist. The injury to the plaintiff’s finger was surgically revised down to the distal interphlangeal joint, or first joint, of his left middle finger on October 30, 1967. On November 6, 1967, Dr. Matta again examined the plaintiff and found him asymptomatic. On November 20, 1967, the plaintiff stated that his finger felt better, but expressed some subjective complaint of pain. On December 9, 1967, the plaintiff was discharged by Dr. Matta as asymptomatic, with instructions to return to work on December 11th. Dr. Matta’s estimate was a fifty percent loss of the use of the plaintiff’s left middle finger.
The plaintiff’s evidence sought to establish that when the stub of his left middle *710 finger touched any object, he experienced a shocking sensation therein which caused him to drop any obj ect which he was holding. He testified at the trial that he attempted to work at three or four different jobs, but was forced to abandon them because of his inability to hold objects with his left hand. He emphasized that his difficulty was increased because of the fact that he was left handed. However, he did not seek medical attention for this condition from the date of his discharge by Dr. Matta on December 9, 1967, until shortly before the trial on the merits, which occurred on October 27, 1969, approximately one year and ten months later. In 1969, shortly before the trial, he was sent to Dr. G. Gernon Brown, an orthopedic specialist, for evaluation. When asked why he did not seek medical attention during this long interval despite the fact that he had been advised that this service would be rendered at no cost to him, he laboriously endeavored to explain his disbelief that the defendants would furnish medical attention to him at no cost.
The plaintiff’s testimony in several respects taxes our credulity, particularly his assertion that he experienced excruciating agony emanating from this finger. Moreover, there was much conflict between his testimony at the trial and that taken by virtue of a deposition on March 7, 1969. In the deposition he related that he had performed absolutely no work in 1968, while at the trial, he stated in conjunction with the testimony of his wife and son, that he made several futile attempts to engage in productive activity during 1968. Another conflict casting doubt on the plaintiff’s credibility revolved around the fact of his working during the early part of 1969 for Mid-State Construction Company. In the deposition he stated that he had worked during the early part of 1969 at Mid-State, but at the trial he flatly and unequivocally denied such work. However, the plaintiff admitted, and the evidence is uncontradicted, that when the trial hereof occurred he was employed by Mid-State Construction Company as a common laborer, performing the identical work which he was performing prior to the accident.
The testimony of Dr. Brown indicated that the plaintiff complained of a “shocking sensation” in the stump of his finger upon palpation. However, motion, sensation, and circulation were satisfactory. The doctor expressed the opinion that the shocking sensation resulted from a possible neuroma in the finger, which resulted from sensory nerve fibers becoming “involved” in the scar during the healing process. Dr. Brown said that this condition was common in amputations such as that undergone by the plaintiff, but that they could be readily relieved by injections of local anesthetic in the scar area, the result of which was to relieve the discomfort for a long enough period so that the tissues involved in the neuroma would stretch and afford permanent relief. He explained that this was a very simple procedure which involved merely an injection with a small needle and could be performed in his office. When interrogated with respect to the authenticity of plaintiff’s pain Dr. Brown cautiously asserted that all of his testimony was predicated upon the statement of subjective symptoms related by the plaintiff, and he refused flatly to render an opinion regarding the genuineness of the plaintiff’s complaints. However, he did significantly state that the plaintiff did not “jump” or take evasive action when the stump was palpated by him.
The most revealing evidence adduced however, was the in-court examination of the plaintiff’s finger by Dr. Matta. Dr. Matta examined the finger and pointed out to the court that the plaintiff first flexed his finger ninety degrees, and then refused to flex the finger beyond forty-five degrees. The doctor was definitely of the opinion during the course of this in-court examination that the plaintiff was deliberately not allowing the flexion of the finger, and he made this observation known to the court quite emphatically.
*711 The whole tenor of the record leads us to the inevitable conclusion that the plaintiff did not sustain total, temporary disability as the result of the accident. On the contrary, we are convinced that he did not tell the truth and that he was fully able to return to work as a common laborer. Our opinion is further buttressed by the result of Dr. Matta’s in-court examination and by the fact that the plaintiff was unquestionably engaged in his previous occupation when the trial hereof occurred.
In view of our opinion that no total, temporary disability was incurred by the plaintiff, the inevitable conclusion is that he is relegated to compensation in conformity with the rationale of R.S. 23:1221(4) (c), (o). As such, he is entitled to the sum of $611.52, subject to a credit for any compensation paid for total temporary disability. In addition, he is entitled to the payment by the defendants of all medical expenses up to the statutory limit of $2,500.00.
For the foregoing reasons, the judgment of the lower court is new amended by changing the amount awarded to him from a maximum of $35.00 per week for 300 weeks to the sum of $611.52, subject to a credit of compensation paid for total, temporary disability. It is further ordered that the defendants are to pay plaintiff’s necessary medical expenses up to the amount of $2,500.00. As thus amended, the judgment of the lower court is affirmed.
The defendants are to pay all costs incurred herein.
Amended and affirmed.
Rehearing denied.

. The plaintiff’s counsel admitted in open court that he did not undergo this treatment within 30 days which raises questions that we have decided to pre-termit in view of the nature of this case.