SARTAIN, Judge.
Ulysse Christophe obtained judgment in the District Court for the benefits accord-' ed total and permanent disability under our workmen’s compensation statutes. From that judgment, his former employer, Southern Bridge Company and its compensation insurer, Houston Fire and Casualty Insurance Company, have appealed. Christophe has answered that appeal seeking statutory penalties and attorney’s fees for the alleged arbitrary and capricious refusal of the insurer to pay benefits. We affirm.
The facts bearing upon a decision in this matter are that on August 1, 1968, the plaintiff, while acting within the course and scope of his employment, was engaged in the operation of an air hammer on an overpass or bridge construction project being completed by his employer' in the Parish of East Baton Rouge. Christophe was breaking concrete with a steam-operated hammer, weighing in excess of 80 pounds, when the hammer suddenly plunged through the concrete being worked on and painfully wrenched plaintiff’s back.
When the pain persisted, the claimant was sent to Dr. Vance G. Byars, who placed him in traction in a local hospital until August 7, 1968. Subsequent recurrences of the pain prompted another period in traction from August 9, 1968, to August 20 of that year.
As the patient showed no improvement from the traction, he was referred by Dr. Byars to Dr. Joseph M. Edelman, a neurosurgeon, who had Christophe admitted to the Baton Rouge General Hospital on December 22, 1968; there, a myelogram was performed which indicated that the inter-vertebral disc at the L-4, 5 innerspace was herniated. Surgery was performed immediately and, some eight days- later, the plaintiff was discharged from the hospital to Dr. Edelman’s care. Subsequent to several office examinations, that physician pronounced him fit to return to work on May 6, 1969.
It is stipulated by the parties that the defendant insurer paid forty weeks of compensation benefits at the rate of $35.00 per week and that they have also paid medical expenses totaling $2,492.30. In May of 1969, compensation payments to the claimant were ceased.
Christophe continued to experience residual pain and stiffness and complained of an inability to do any work at all. On June 13, 1969, he entered the care of Dr. Rhodes J. Spedale, a general practitioner and surgeon, who examined him on several occasions and administered diathermy treatments over a period of weeks. On June 24, 1969, Christophe was examined by Dr. Alan C. Farries, an orthopedic surgeon, upon referral from Dr. Spedale, who also saw him on two subsequent occasions. The evaluations of the plaintiff’s condition by these doctors are not in conflict.
Dr. Spedale, a physician of some forty years experience, by deposition, testified that he personally examined the plaintiff on at least eight different occasions and that he found muscle spasms in the affected area on each visit. He positively stated that he does not believe that Christophe *824 will ever again be able to perform heavy work and that his disability is of a permanent nature.
This opinion is also shared by Dr. Far-ries. On one of the claimant’s three visits to him, there was a definite diagnosis of muscle spasm in the lumbar region which was treated with a cortisone preparation injection. It was Dr. Farries’ testimony, also by deposition, that the plaintiff could not return to his usual occupation because of the nature of the injury he had sustained as, in his opinion, the removal of a herniated intervertebral disc tends to produce accompanying difficulties which could be aggravated further by considerable exertion.
After his compensation payments were terminated, the petitioner applied for unemployment benefits from the Department of Public Welfare. He was referred by that agency to Dr. Jack F. Loupe, an orthopedic surgeon, for his evaluation. In an examination conducted on October 20, 1969, he found that Christophe had a good range of motion but that some discomfort was experienced at the extremes of movements, especially when straightening up. He found some degree of instability in the lumbosacral area and that there was tenderness to palpation over the area affected. He concluded that Christophe was disabled from heavy or strenuous work and should be restricted to moderate or non-strenuous labor until further evaluation. His testimony was that, in his opinion, his condition- prohibited the operation of an air hammer of the weight involved here.
Demands upon Houston Fire and Casualty to resume payments based upon written reports from these physicians brought no response, as they continued to rely upon the evaluation of Dr. Edelman, the treating physician.
At the trial, Dr. Edelman again reiterated his position that the claimant could return to his previous occupation. In examinations on May 6th and June 25th of 1969, he found that the petitioner had excellent strength in his legs, that he had a very supple, flexible back and that he had regained a full range of motion in the affected area. He found no evidence of muscle spasm and concluded that there was no reason, of a medical nature, why Chris-tophe could not return to work in his former occupation.
In his written reasons for judgment, the trial judge correctly stated that a resolution of this issue involved an evaluation of conflicting medical findings emanating from testimony elicited from “physicians who are accorded the utmost respect and whose reputations and qualifications are of the highest calibre”. Nevertheless, the judge a quo held that the weight and preponderance of the medical evidence establishes that the plaintiff is totally and permanently disabled and unable to perform the type of work he had done prior to this accident. With this conclusion we are in complete agreement. Plaintiff, while designated a common laborer, performed work of a most strenuous and arduous nature. When he was not operating an air hammer he would assist in the pouring of concrete. Further, the evidence clearly preponderates to the effect that it would be dangerous to plaintiff’s health if he endeavored to lift any object heavier than fifty pounds. A laborer with this disability is clearly unable to compete in the labor market and is entitled to maximum compensation benefits.
Since Knispel v. Gulf States Utilities Co., 174 La. 401, 141 So. 9 (1932), our Courts have been committed to the principle that, for the purposes of our workmen’s compensation statutes, a worker is totally and permanently disabled when he is incapacitated by job-related injuries which prevent him from performing work of the same or similar nature which he was accustomed to performing. In Knis-pel, supra, our Supreme Court observed:
“The disability should, we think, be deemed total to do work of any reasonable *825 character, within the intendment of the law, whenever it appears that the employee, due to the injury, is unable to perform work of the same or similar description that he is accustomed to perform. When he is unable to perform such character of work, his occupation, due to the injury received in his employer’s service, has been taken from him, and he is in the world without an occupation. In his position he is wholly incapacitated, and what little he may learn or be able to do thereafter will likely be done under greater difficulties, placing him at a disadvantage even in securing what work he may be able to perform.”
We now turn our attention to plaintiff’s claim for statutory penalties and attorney’s fees which he claims should be paid by the defendants due to its arbitrary and capricious termination of compensation benefits. L.R.S. 22:658, 23:1201.2. The trial judge acknowledged that the circumstances in this case make the decision as to the award of penalties and attorney’s fees “a real close borderline question”. However, the trial judge concluded “Had Dr. Edelman been consulted only to ascertain his diagnosis and opinion as to the question of disability, this court would have no hesitancy in concluding that the defendants were arbitrary. However, Dr. Edelman performed the surgery and continued to be the treating physician until he discharged plaintiff as recovered. Therefore, the court denies plaintiff’s claim for penalties and attorney’s fees”. In this conclusion we cannot hold that the trial judge committed manifest error. These reports from Drs. Farries and Loupe, orthopedic specialists, together with that of Dr. Spedale, a general practitioner, were furnished to the defendant, insurer, and in turn reviewed by Dr. Edelman. These reports prompted additional examinations of the plaintiff by Dr. Edelman. On these latter examinations, Dr. Edelman found no objective symptoms which would cause him to change his conclusion that plaintiff could return to his regular work. While it would appear, as counsel for plaintiff strenuously urges, that we have three physicians testifying that plaintiff is incapable of doing heavy work and one physician that says he is, we find that the opinions of Drs. Loupe and Farries are somewhat qualified. Following his examination of July 22, 1969, Dr. Farries was of the opinion that plaintiff could do light duty but recommended against heavy lifting on the theory that the previous disc operation rendered plaintiff more susceptible to injury of a similar nature if he were to resume heavy work. Dr. Farries also found that on August 11, 1969, plaintiff exhibited no objective findings and could discern no muscle spasm in the lumbar region. This finding is in contrast to that of Dr. Spedale who testified that on each occasion that he examined plaintiff muscle spasm was detected. Dr. Loupe saw plaintiff on only one occasion, namely, October 20, 1969. Though he found that plaintiff was unable to do strenuous work he was of the opinion that he was capable of doing “moderate” work. On this occasion Dr. Loupe observed no muscle spasm, and that plaintiff “was in no acute distress”.
We point to these variances of opinion between plaintiff’s experts only to determine whether or not under the particular facts of this case defendants acted arbitrarily in failing to resume compensation payments to the plaintiff. Considering the testimony of these witnesses we are not disposed to reverse the trial judge on this issue.
Accordingly, for the above and foregoing reasons the judgment of the district court is affirmed at defendant-appellants’ costs.
Affirmed.