BOLIN, Judge.
Thomas N. Arnold appeals from a judgment rendered against his employer, Kroehler Manufacturing Company and its insurer, Liberty Mutual Life Insurance Company, awarding plaintiff workmen’s compensation benefits for 150 weeks rather than 400 weeks for which he had sued.
It is undisputed Arnold was accidentally injured while working as a “table shaper” in a furniture factory owned and operated by Kroehler. The accident resulted when Arnold’s hand was pulled into a machine with rotating blades. He was immediately hospitalized and his left thumb was amputated at the proximal joint, and an injury to his left forefinger was repaired. Subsequently, he was again hospitalized and surgery was performed to deepen the “web” between the stump of the amputated thumb and his index finger. Plastic surgery was also performed to replace scar tissue with healthy skin.
It was admitted by supplemental answer that the employee’s compensation payments were governed by La.R.S. 23:1221(4) (o). This section of the act provides for the payment of benefits for the permanent partial loss or use or function of a member named in the preceding subsections of that act. In this case the trial judge found plaintiff had permanent partial loss of the use of his hand and was entitled to $35 per week for one hundred and fifty weeks. *227 Appellees have not appealed, and ask only that this award be affirmed.
The only issue before this court is whether Arnold is totally and permanently disabled so as to .entitle him to compensation for 400 weeks as provided by La.R.S. 23:1221(2).
A “table shaper” is a skilled laborer. Under the jurisprudence of this State a skilled workman is totally and permanently disabled if he is unable to perform the same or similar duties he was performing at the time of the accident. Knispel v. Gulf States Utilities Company, 174 La. 401, 141 So. 9 (1932); Carlock v. Gross, (La.App. 4 Cir. 1967), 200 So.2d 353, and cases cited therein.
Arnold testified he had not attempted to return to the type of work he was doing when injured. When asked why he felt he was not capable of operating this table shaper, he replied he did not have sufficient strength in his left hand to hold the wood firmly in the machine to avoid it being thrown out. When asked if he thought his speed in operating this machine would be affected by the loss of his thumb, he replied, “yes” for the reason he did not feel safe and the absence of his thumb would slow him down. Approximately nine months after his accident he began working for Central Station Alarms, which required him to drive an automobile, and he continued to work there up to the time of trial.
As we view this case it presents purely a factual question, and that is whether Arnold has shown by a preponderance of evidence that the amputation of his left thumb has rendered him incapable of performing the duties of a table shaper or similar duties without substantial pain or danger to his fellow employees. The testimony of four physicians was taken, and the two who were most familiar with the duties performed by Arnold said the loss of his thumb would not in any way hinder him in doing the same or similar work. A motion picture was taken which depicted the duties of a table shaper, and both the lower court and this court have viewed this film. Several exhibits have been filed which aid in understanding the duties performed by Arnold. During the trial the district judge observed plaintiff’s demeanor and particularly the dexterity with which he used his hands. In his reasons for judgment he said:
“On the trial of the case the Court carefully watched the motion pictures that were shown to see the manner of operation of this machine. The Court carefully watched others demonstrate the operation of the machine and watched others demonstrate the exhibits brought to Court. The Court carefully observed the demonstrations by plaintiff himself. The Court observed the plaintiff pick up and handle plaintiff’s Exhibit Number 3 [a wood shaper form] in the normal manner and the stump of the thumb, even though it is short, was used in a normal fashion. Plaintiff also demonstrated with Plaintiff’s Exhibit Number 4 [wooden shaper form] satisfactorily. It is my conclusion that the plaintiff can perform this particular job without substantial pain or unusual difficulty. After carefully watching the plaintiff and his demeanor, I feel that his complaint of pain is somewhat exaggerated, just as his claim of indigency was at the time the suit was filed. The Court is convinced that any residual tenderness he has will disappear with the use of the hand. The Court feels that after an initial period of ineptness, plaintiff will be as efficient as ever.
We do not intend to minimize the seriousness of this case, but we deem it unnecessary to detail the evidence because we have concluded the issue presented is factual. Suffice it to say, the trial judge has resolved these facts in favor of defendants, and there is ample evidence to support his findings.
Plaintiff has not disputed the judgment as it relates to the weekly benefit rate or *228 medical expenses, and defendants have not objected to being cast for cost of the trial. Accordingly, the judgment appealed from is affirmed and appellant is cast with the cost of this appeal.