HOOD, Judge.
This is a workmen’s compensation suit instituted by Laurice P. Bearb against C. P. Boutte and his insurer, Rockwood Insurance Company. The trial court rendered judgment in favor of plaintiff, and defendants have appealed.
The principal issue presented is whether plaintiff is totally and permanently disabled as a result of injuries sustained by him in the alleged work-connected accident.
Plaintiff cut his left index finger with a skill saw on November 8, 1971, while he was working as a carpenter’s helper for defendant Boutte. He was treated initially by Dr. Elmo LaBorde, and that treatment included the amputation of the first phalanx of plaintiff’s left index finger at a point just below, or on the body side of, the distal joint. Plaintiff continued to have pain in his left hand following that amputation, and in early February, 1972 Dr. LaBorde referred him to Dr. Darrell L. Henderson, an expert in plastic and reconstructive surgery, with a sub-specialty in surgery of the hand.
Dr. Henderson performed surgery on plaintiff’s left index finger on February 8, 1972, the surgery consisting of a “revision of the amputation stump, left index finger, shortening the bone and re-section of digital nerve neuroma.” Bearb continued to complain of pain in the stump of his amputated finger following that surgery, however, and because of those complaints, Dr. Henderson performed another surgical procedure on plaintiff’s hand on April 21, 1972. The surgery performed at that time consisted of the removal of the entire left index finger to the metacarpal-phalangeal joint, or to the joint where the finger joins the hand.
Plaintiff remained under the treatment of Dr. Henderson from early February to July 10, 1972, at which time the doctor discharged him from further treatment. Dr. Henderson’s testimony and two reports submitted by him constitute the only medical evidence in the record. He testified that in his opinion plaintiff was able to return to work as a carpenter or carpenter’s helper at the time he was discharged on July 10, 1972, which is the last time the doctor saw plaintiff, despite the fact that Bearb had a permanent partial loss of function of the left hand.
Dr. Henderson felt that plaintiff’s left hand would be approximately 20 percent weaker than it was before the accident, simply because he had lost one of five fingers. He also felt that plaintiff had a permanent partial disability of 23 percent of the hand as a whole, and he explained that he Usually allows that percentage of disability to the hand for the loss of an index finger in any case, and he ordinarily allows a fixed percentage of disability for the loss of any Other finger. He allows 40 percent disability to the hand for the loss of a thumb, for instance, 13 percent for the loss of the long finger, 8 percent for the loss of the ring finger, and 16 percent for the loss of the little finger. In his opinion, however, the loss of the index finger of plaintiff’s left hand does not disable him from performing the same type of work he was doing before the accident.
Plaintiff has a fifth grade education. He has performed work involving the installation of sheet rock for about two and one-half years, but he had been a carpenter’s helper for only five or six weeks before the accident occurred. He does not belong to a union. He testified that he has attempted to obtain work as a carpenter or carpenter’s helper since he was discharged by his treating physician in July, 1972, but that he has been unable to find any such employment. This suit was tried on April 3, 1973, and for a period of approximately six months immediately prior thereto he, had worked as a laborer for the Louisiana Department of Highways. He works eight hours a day, and his duties require him to drive a 2\/z ton dump truck without power steering, hauling hot mix for repairing holes in highways. He states that he hauls *535 the hot mix to the place where the highway is to be repaired, dumps some of it into the hold and then he spreads the hot mix over the damaged area with a rake or shovel. He submitted to a physical examination before he obtained employment by the State, and he was approved as being physically able to perform that work, even though that occurred after his finger had been amputated.
Although plaintiff has attempted to obtain employment as a carpenter or carpener’s helper, he states that he is unable to perform that type work, primarily because he does not have enough strength in his left hand to hold up large sheets of sheet rock, each being twelve feet long and weighing about 100 pounds, and at the same time to nail those sheets to the wall. He said, “When I put my hand on the nail and board to hold it up my hand swolls and it gets big and it hurts.” He stated that he is unable to climb a ladder because of lack of strength in his “hands,” and because “this hand hurts me so much I am afraid to fall so I don’t climb.” He testified that he is “not hardly” able to hold nails with his left hand, explaining that the nail would slip and would cause him to strike his hand, and that his hand would hurt when “I bump it.”
Dr. Henderson stated that in his opinion plaintiff’s left hand would become stronger as he used it. He stated that although the plaintiff might experience some “discomfort” when he first began to work after recovering from his injury, he felt that the pain which he might suffer under those circumstances would not be severe, and that the “level of discomfort” which he might experience would not impair him in any way from performing the duties of a carpenter, and that in a relatively short time even that discomfort would completely disappear.
Mr. Howard Duncan, a general contractor, testified that he did not think he would employ plaintiff as a carpenter “because I really don’t need to employ people that are cripple, because we got plenty other carpenters otherwise.” He stated that he has never employed a person who had lost a finger, and that he felt that he would be reluctant to do so. He assigned as his reasons for not hiring a person with a missing finger, “because there are so many other people that are not handicapped that are available for work.”
The trial judge concluded initially that plaintiff was “at least a semi-skilled workman” and that he had a 23 percent permanent . partial disability related to his left hand as a whole, but that this partial disability resulting from the loss of his left index finger did not disable him from performing the duties of a carpenter or carpenter’s helper. He rejected plaintiff’s testimony that he could not perform those duties, and he concluded that the pain or “discomfort” which plaintiff may suffer when he attempts to do carpentry work now is not substantial or appreciable enough to be disabling. The trial court also concluded that the testimony of Duncan, the general contractor, was not sufficient to show that plaintiff was unable to complete with able-bodied workmen in the labor market. In view of those findings, the trial judge held initially that plaintiff was entitled to recover compensation benefits for the permanent partial loss of the function of his left hand under the provisions of LSA-R.S. 23:1221(4) (e) and (4) (o). Judgment thus was rendered on May 21, 1973, awarding plaintiff workmen’s compensation benefits at the rate of $49.00 per week, from the date of the accident and continuing for a period of 150 weeks.
After that judgment was rendered, plaintiff applied for a new trial, and the trial judge granted that motion for the purpose of reargument and for receiving in evidence a stipulation as to the average weekly earnings of plaintiff. Following the reargument, the trial judge reconsidered the testimony of Mr. Duncan, the general contractor, to the effect that he would be reluctant to employ plaintiff as a carpenter *536 or carpenter’s helper, and he concluded that plaintiff is not able to compete in the labor market. The trial judge said:
“While his testimony (Duncan’s) does not afford the court with a complete picture of the state of the labor market or hiring practices in general, it does show that the plaintiff is not able to compete with able-bodied workmen in the labor market. The testimony of Mr. Duncan was uncontradicted.”
The district judge thereupon revoked his former decree and rendered judgment on August 18, 1973, awarding plaintiff compensation at the rate of $49.00 per week for a period of 500 weeks, subject to a credit for all compensation previously paid. It is from that judgment that the present appeal was taken.
On this appeal plaintiff argues that he is entitled to compensation based on total and permanent disability whether he is regarded as a skilled worker or as a common laborer. He contends, primarily, as we understand his argument, that he is a skilled carpenter or carpenter’s helper, and that as a result of the injury which he sustained he has been totally disabled from performing the type of work for which he is suited by training and experience. Alternatively, he argues that if he is considered to be a common laborer, his injury disables him from performing work of a kind similar to that which he is accustomed to performing, and it substantially handicaps him in competing with able-bodied workers in the common labor market.
The evidence shows that plaintiff is able to do the same kind of work he did before the accident occurred. It is true that he has lost the index finger of one hand, but there is no nerve involvement or sensitive area in the hand, he suffers no appreciable or disabling pain, none of the other fingers on that hand have been affected in any way, and the rest of his left hand has remained as flexible and as functional as it was before the accident. The only basis he has for claiming disability is that he now has one less finger on his left hand.
The trial judge concluded that these were the facts when he initially decided the case, and it is significant that he did not modify or change any of those factual findings after the case was reargued. The judgment appealed from is based solely on the trial court’s ultimate finding that although plaintiff is not disabled from performing the work of a carpenter’s helper or work of a kind similar to that which he is accustomed to performing, he nevertheless must be regarded as being totally and permanently disabled because the loss of one finger substantially handicaps him in competing in the labor market. '
We think the trial judge was correct in the conclusion he reached when the case was first decided, that is, that plaintiff can perform the type of work to which he was accustomed, and that he is not substantially handicapped in competing in the common labor market. Although Mr. Duncan states that he is reluctant to employ a person with one finger missing, he did not pretend to speak for other general contractors, and we are not convinced from his testimony that any other employer has that attitude. The evidence shows that the Louisiana Highway Department was not reluctant to hire plaintiff to do exceptionally heavy work, despite the fact that the index finger of one hand was missing, and the doctors who examined him for that employment apparently felt that he was abled bodied.
We have been referred to no case in which a worker, whether skilled or unskilled, has been held to have been totally and permanently disabled solely because of the loss of a finger. The cases which we have found and consider to be applicable indicate to us -that considering the experience and type of work performed by plaintiff, an injury such as that sustained by Bearb in the instant suit should not be held to be totally disabling or to be a substantial handicap to the claimant in his ef *537 forts to compete in the common labor market. See Ory v. Metal Building Products Co., 265 So.2d 338 (La.App. 4 Cir. 1972); Pennywell v. Crawford, 262 So.2d 830 (La.App. 2 Cir. 1972); Budd v. Nichols Construction Co., 225 So.2d 636 (La.App. 1 Cir. 1969); Williams v. Equitable Equipment Co., 239 So.2d 708 (La.App. 4 Cir. 1970); Ariderson v. May, 195 So.2d 783 (La.App. 1 Cir. 1940; Moore v. A. C. Suhren Houma Corporation, 269 So.2d 476 (La.App. 1 Cir. 1972); Bates v. American Insurance Co., 158 So.2d 70 (La.App. 1 Cir. 1963); and Arnold v. Liberty Mutual Insurance Co., 253 So.2d 226 (La.App. 2 Cir. 1971).
Our conclusion is that plaintiff has not been disabled since July 10, 1972, when he was discharged by Dr.' Henderson, from performing the type of work to which he is suited by training or experience or work similar to that which he is accustomed to performing. We feel, therefore, that the trial court erred in awarding plaintiff benefits based on total and permanent disability. In our opinion plaintiff is entitled to recover compensation benefits based on the permanent partial loss of the use or function of his hand under the provisions of LSA-R.S. 23:1221(4) (e) and (o), subject to credit for payments which already have been made.
The trial judge awarded plaintiff penalties and attorney’s fees. Defendants, in asserting that the trial court erred, contend that they relied on competent medical reports in deciding to terminate the payment of weekly compensation benefits, that those reports indicated that plaintiff had recovered, and that they thus were not arbitrary, capricious or unreasonable in discontinuing the payment of benefits.
The evidence shows that the defendant insurer paid compensation benefits to plaintiff at the maximum rate of $49.00 per week from the date of the accident until June 8, 1972, or for a total of 30 weeks. The total sum of $1,470.00 was paid as compensation benefits, and the additional amount of $2,084.03 was paid by defendants as medical expenses.
The evidence shows that plaintiff was totally disabled until July 10, 1972, and that since that time he has had the permanent partial loss of the use or function of the left hand, to the extent of 23 percent. The defendant insurer was notified ,by Dr. Henderson on June 30, 1972, that plaintiff was still totally disabled at that time, but that he probably would be able to return to his job as a carpenter in about three weeks thereafter, although he would have a 23 percent loss of the function of his hand. On July 12, 1972, Dr. Henderson notified the insurer that plaintiff could then return to work, but that he would have the permanent partial disability of the hand which previously had been mentioned.
The defendant insurer has offered no satisfactory explanation as to why it terminated the payment of compensation benefits before either of the above mentioned reports was received. Even if defendant had obtained the information contained in those reports before June 8, 1972, it would then have been apprised of the fact that it at least owed compensation benefits based on the partial loss of the function of the hand, which amounted to more than the aggregate sum which had been paid to plaintiff as compensation benefits. We find no error in the holding of the trial judge, therefore, that the defendants are liable for penalties and attorney’s fees. We think the award of $750.00 for attorney’s fees is reasonable.
Bearb was earning $106.75 per week at the time of his injury. He sustained a 23 percent loss of function of his hand, and he thus is entitled to recover 23 percent of 65 percent of $106.75 per week, for 150 weeks. According to our figures, that amounts to $15.96 per week, or the total sum of $2,394.00 for the entire period of 150 weeks. Defendants, of course, are entitled to a credit for $1,470.00, being the-amount of weekly compensation benefits which it already has paid.
*538 For the reasons assigned, the judgment appealed from is amended by deleting from that judgment the award to plaintiff of compensation benefits for a period of 500 weeks, and decreeing in lieu thereof that defendants are condemned to pay plaintiff the sum of $15.96 per week, beginning on November 8, 1971, and continuing for' a period of 150 weeks thereafter, with interest thereon at the rate of 7 percent per annum from date each such payment became due until paid, subject to a credit of $1,470.00, being the amount of weekly compensation benefits which already have been paid to plaintiff. The judgment appealed from is affirmed in all other respects, including the award to plaintiff of penalties and attorney’s fees and all court costs. The costs of this appeal are assessed to defendants-appellants.
Amended and affirmed.
WATSON, J., dissents and assigns written reasons.